## CAMMACK *v.* GRIFFIN et al.

In the distribution of the proceeds of a steamer sold under attachment, the creditors of the boat are entitled to a preference over one claiming a privilege as a vendor of the steamer.

Where a vendor takes the notes of the purchaser, payable at a future day, "in payment of the balance of the price," it is a novation of the debt; and the remedy of the vendor will be confined to a personal action against the parties to the notes.

Where the vendors of a steamer intervene in an action by an attaching creditor, claiming to be paid, by preference out of the proceeds of the sale, the amount of notes secured by a deed of trust on the steamer, the production of the notes and deed of trust is indispensable

to the establishment of their claim. An endorsement on the enrollment declaring the existence of the deed of trust and the date and amount of the notes, and the recital of the deed in the act of sale to the defendant in attachment, are not sufficient against third persons

APPEAL from the Commercial Court of New Orleans, *Watts*, J.

Moore sold to the defendant, *Griffin*, in October, 1845, the steamer Sea Bird, by notarial act. The act of sale recites : " That this sale is made for the price of $10,500, in part payment of which said purchaser has paid to the vendor $3,500 in ready money; and in payment of the balance of said price, to wit, $7000, the said purchaser has, *first*, furnished his three several promissory notes, for the sum of $800 06 each, each drawn to the order of and endorsed by *William K. English*, dated this day, and payable &c.; and *second*, the said purchaser hereby puts himself in the place and stead of said vendor, and assumes to pay to his acquittance five certain promissory notes, given by him to *Albert Todd* and *Charles H. Haven*, as trustees, in trust for *Willard Arnold* of . Kentucky, and secured by deed of trust bearing date 24th September, 1845; one for the sum of $320 50, payable 24th November, 1845; one for $1069 83, payable 24th December, 1845; another for the same amount, payable 24th February, 1846; one for same amount, payable 24th March, 1846; and one for the same amount payable 24th May, 1846, with interest from date until paid, at the rate of six per cent per annum." A memorandum of the deed of trust, giving its date, with a description of the notes, was endorsed on the enrollment of the steamer, by the surveyor and inspector, and is set forth in the act of sale to *Griffin*. *Cammack*, the plaintiff, having attached the boat, *Moore*, and the trustees of *Arnold*, intervened, claiming a privilege as vendors, the former for two of the notes executed in his favor remaining unpaid, and the latter for the amount of the five notes due to them as trustees. There were other intervenors, whose claims the nature of the decision renders it unnecessary to notice. There was a judgment below ordering the payment, in the first place, of certain claims of the first class, for wages of the crew; advances of money, supplies and materials, &c., leaving a balance of $2517 67, which was ordered to be paid to *Todd* and *Haven*, trustees. *Moore* was also decreed to be entitled to a privilege as vendor, for the amount of his unpaid notes. The plaintiff, *Merle, Beylle & Co.* and *H. C. Cammack & Co.*, intervening parties, appealed.

*C. M. Jones* and *L. Pierce*, for the plaintiffs and appellants. The court below considered that *Moore* had the privilege, given by the Code to the vendor of moveable things while in the possession of the vendee. But this article of the Code is not applicacle to a ship or vessel, as will appear by examining the articles of the Code touching privileges on certain moveables. The section 2d, beginning at article 3183, says "there are some privileges which act on particular moveables," and, after enumerating various ones, all inapplicable in terms to ships and vessels, at no. 7 mentions that of "the price due on *moveable effects*, if they are yet in possession of the purchaser." Ships and vessels are never spoken of as *moveable effects*. The enumeration of the nine cases of privilege shows plainly that the legislator had not, at the time, in contemplation ships and vessels, but intended to treat of them apart; and so he does, after discussing separately the six items from which the others are corollaries: "the privilege of the lessor,"—"the privilege on the thing pledged,"—"the privilege of the depositor,"—"of expenses incurred in the preservation of the thing"—"of the privilege of the vendor of moveable effects"—"of the privilege of the innkeeper." He then commences another section—section 3d—headed, " Of the privileges on ships and merchandise," and says, article 3204, "the following debts are privileged on the price of ships and other vessels," &c.: "8thly, sums due to sellers, &c., if the vessel has never made a voyage," &c. Here, then, is a positive enactment concerning this matter; and it is only before a vessel has made a voyage, that the seller pre-

serves his privilege of vendor. It is in evidence that the Sea Bird had made voyages since her purchase, and under this article the privilege was lost.

But the two notes were taken in payment; and if there had been no voyage, the privilege of the vendor would have been lost. *Barrow* v. *Howe*, 2 Mart. N. S. pp. 147, 150. *Abat* v. *Nolte's Syndics*, 6 Ibid, N. S. pp. 636, 638.

The claim of *Todd* and *Haven*, as trustees for *Arnold* was acquired under a trust deed, of which we know nothing more than is endorsed on the papers in the words following:

"I, *Isaac H. Hodges*, surveyor and inspector, have this day filed a deed of trust in favor of *Albert Todd* and *Charles H. Haven*, as trustees, in trust for *Willard Arnold*, of Kentucky, to secure the said *Arnold* the payment of five promissory notes," reciting the dates and amounts of the notes. It has been shown that there is no vendor's privilege for this; but it is urged on behalf of *Arnold*, that this trust deed is intended as a mortgage; that vessels are liable to be mortgaged (art. 3256); that it is not necessary that they should be recorded, but that hypothecations of vessels are made according to the laws and usages of commerce (art. 3272,) and that the mortgage arising from this trust deed, and so noticed on the papers, has its validity recognised by those usages and laws existing in the general Commercial Code, "upheld by general consent, growing out of the mutual wants of nations, and founded on principles of natural equity, which are of universal obligation." *Malcom* v. *Henrietta*, 7 La. Rep. 492.

In any case, to be binding on others, the mortgage must be shown to be according to the laws and usages of commerce. What are these laws and usages. By the law of France, mortgages of vessels are forbidden. Boulay Paty, Droit Com. Mar. pp. 106-8. Abbot on Shipping, edit. of 1812, p. 13. By the laws of England, mortgages of a ship or vessel are allowed; and this form of security is regulated, first, by a statute George III, and after, by a statute of 6 George IV, § 110. This statute is of so late a date, that judge Bullard could not have had reference to it, as making the commercial law, and we must therefore go back to the practical difficulties and doubts under the old statutes. Vide Bell's Commentaries, vol. i. p. 158, 164. Holt on Shipping, vol. i, p. 306, says: "Notwithstanding the above cases, *Witson* v. *Hinther*, 5 Taunton, 642, &c., it is not to be concluded that there can be no valid mortgage of a ship." "The mortgage of a ship, like the mortgage of any other chattel, may take place subject to the restrictions laid down in courts of law and equity relative to such mortgages. The main and fundamental principle, as respects property in shipping, is this, that there can be no valid mortgage without complying with all the forms of the register acts: a transfer by mortgage, made known to the public, and confined to british subjects, is within the spirit of the acts," &c. The english mortgages, are, therefore, altogether subject to the statutes, passed from time to time, in William, George the Third and George the Fourth's time. Where are the general commercial laws to which we are to look? That a ship can be mortgaged for debt, we are told by the Code; that it is to be under the general commercial law, &c., we are told by the Supreme Court, in 7 La. Rep., but we are not aware of any nation that has construed these mortgages independent of statute. We know merely what would be a useful rule of equity to be hereafter established. Judging from analogy to the requisitions of the statutes, a mortgage of a ship, to be binding upon third persons, and others acquiring privileges by virtue of laws of their own *states* or sovereignties and under them, should be so fully stated, recited and explained upon the ship's papers, that there could be no mistake or misunderstanding concerning the nature and extent of the incumbrance on the part of a creditor seeking information, or persons wishing to require precise information as to his security upon a projected advance.

The plaintiff is deprived of the privilege, given to him by the laws of his country, by an instrument reputed to have been made in the State of Missouri. This instrument is not recorded; the clauses and conditions of the *defeasance* are not stated, much less recited; and the act is not verified by Hodges.

This would not be a *mortgage* in England; shall it be so construed here, because *Griffin*, the purchaser, acknowledges that he has never paid such notes? It may well be his personal debt if such notes exist; but it is not a lien—it is not a mortgage, entitled to effect against third persons under the commercial law. 5 Taunton, *supra*.

CAMMACK
v.
GRIFFIN.

The pretended mortgage, however, in the present case, was made in a common law State, and "there is no substantial difference at common law between a mortgage of real estate and a chattel; in both cases the property vests in the mortgagee subject to be defeated by the performance of the condition; and on forfeiture, or non-performance of the condition, his interest becomes absolute." *Badlam* v. *Tucker et al.*, 1 Pick. 399.

Unless, therefore, there was a stipulation in this trust deed leaving the possession with the morgagor, the vessel not having been reduced into possession before the attachment, the latter will have the preference. *Edwards* v. *Harben*, 2 Durn. and East, 596. *Kidd* v. *Rawlinson*, 2 B. and P., 60. Abbott on Shipping, 10. *Portland Bank* v. *Stubbs*, 6 Mass. 425. *Putnam* v. *Dutch*, 8 Mass. Rep. 287. *Gale* v. *Ward*, 14 Mass. 352. *Lamb* v. *Durant*, 12 Mass. 54. *Lamphear* v. *Sumner*, 17 Mass. 110. *Bartlett* v. *Williams*, 1 Pick 288; and vide 3 Cowen's Rep. p. 187 in note, for all the decisions upon this point. As we have not the trust deed, if any there were, before us, we cannot presume as to its stipulations. There is no reference in the memorandum on the boat's papers to any special agreement as to possession, and it must be considered as a transfer with a defeasance. In such case, under the above decisions, the mortgagee has been negligent, and the attaching creditors have preference, as stated in 2 D. and E. and 1st Pickering.

*Cohen* and *Preston*, for the intervenors, *Moore*, and *Todd* and *Haven*. The judgment in favor of *Moore* is correct. Civil Code, arts. 3194, 3184, no. 7, illustrated by 3230, and 3234. Her claim is postponed only to law charges, 2 Rob. 280; 527. 10 La. 68, *Terry's* case. Art. 3204 relates to privileges upon ships and vessels for sixty days, into whose hands soever they may come; but the vendor's privilege is only while the moveable belongs to the vendee. These privileges do not conflict: one is special—into whosoever hands; the other is a general privilege, in the hands of the vendee. 17 La. 161. As to the pretence that *Moore* took the two notes in payment, the authority cited by the counsel of plaintiff only establishes that nothing prevents a debtor and creditor from agreeing, by contract, that a note shall be given and received as a payment. In the cases on this point a recipt was given. . The novation resulted from clear expressions used to that effect.

The trustees of *Arnold*, claim by virtue of the stipulation in their favor, in the sale from *Moore* to *Griffin*, that they should be paid *as part of the price*. See La. Code, art. 1884. But in addition to the vendor's privilege in common with *Moore*, the trustees had a mortgage. The Civil Code, art. 3272, gives the mortgage, which was made according to the laws and usages of commerce. Abbott on Shipping, p. 36. The Civil Code, article 3256, declares ships and other vessels susceptible of mortgage; and art. 3272 declares, "that hypothecations of ships and other vessels are made according to the laws and usages of commerce."

An attaching creditor has no priority of payment over privileges and mortgages. An attachment only gives a priority of payment over ordinary creditors, or such as attach later. The attaching creditor can only take the property, *cum onere;* he attaches the right, title and interest of defendant in the thing, *subject to prior liens.* But the plaintiff contends that the vendor of a ship has no privilege, because none is given by the section 3, headed, of Privileges on Ships, &c., art. 3204, &c. To this we reply, that articles 3194, and 3184, no. 7, give the privilege, if the property still remain in the possession of the purchaser; and articles 3204, &c. give the privilege into whose hands soever the property comes.

*T. A. Clarke*, for the appellants. *H. C. Cammack & Co. W. S. Upton*, and *C. M. Randall*, for other appellees.

The judgment of the court was pronounced by

EUSTIS, C. J.* The appeal before us is from a judgment of the late Commercial Court of New Orleans, distributing the proceeds of the steamer Sea Bird among the different classes of creditors. It is prepared with great care, and we regret that it is not in our power to determine several important questions of law which the learned judge has passed upon in his opinion.

---

SLIDELL, J. did not sit in this case, having been of counsel in the court of the first instance.

We concur in the judgment as to the distribution in favor of the creditors, which gives them a preference to the privilege claimed for the vendor. The balance, $2,517 67, which is assigned to *Todd* & *Haven*, trustees of *Arnold*, we think they are not entitled to receive, adversely to the attaching creditors. It appears that, in October, 1845, in New Orleans, by public act, *Moore* sold to *Griffin* the steamer Sea Bird, for the sum of $10,500, of which $3,500 was paid in cash, and, *in payment of the balance of said price*, the purchaser furnished his three promissory notes for the sum of $800 06 each, payable one at ten days after date, and the others on the first of April and July then next ensuing; and the purchaser placed himself in the stead of the vender and assumed to pay, to his acquittance, five certain promissory notes given by the vendor to *Albert Todd*, and *Charles H. Haven*, as trustees for *Willard Arnold*, of Kentucky, and secured by deed of trust, dated the 24th of September, 1845. The notes were five in number, and bore interest from date, and the last was payable in May, 1846.

An endorsment, on the enrollment, of the deed of trust, giving its date and a description of the notes, was made at St. Louis, and the same endorsement was made in the new enrollment, taken out in New Orleans on the change of ownership. On the steamer being attached, *Moore* filed his petition and inventory, in which he claimed the vendor's privilege for two of the notes of $800 06, which he alleges are unpaid. *Todd* and *Haven*, as trustees for *Arnold*, also intervened, and claimed the vendor's privilege, for $4,599 82, the amount of the five notes which constituted part of the price of the steamer, in the sale from *Moore* to *Griffin*, averring that the steamer was subject to the hypothecation created by the deed of trust endorsed on the enrollment. The judgment of the Commercial Court was in favor of the latter claim, which took the balance of the proceeds of the steamer, $2,517 67; and also considered that *Moore's* privilege, as vendor, existed, and was in full effect for the amount of the two unpaid notes.

To this claim of *Moore*, it is objected that the two notes were received in payment of part of the price. The authorities, cited by the counsel for the plaintiff, are conclusive on this point, and the words of the act leave no room for doubt. There is a complete novation of the debt, by a substitution *in payment* of the notes for the price. The notes, on their face, bear that they are in *part payment* for the steamboat Sea Bird, by act &c. It is clear that the remedy of *Moore* is confined to his personal action against the parties to the notes. *Barrow* v. *Howe*, 2 Mart. N. S. 147. *Abat* v. *Nolté's syndics*, 6 Ibid, N. S. 637. In relation to the claim of *Todd* and *Haven*, we have no evidence whatever, except the endorsement on the enrollment and the recital in the act of sale from *Moore* to *Griffin*. The notes themselves were not produced, nor was the deed of trust exhibited ; and on every principle of the law of evidence, against third persons, attaching creditors, their production was indispensable to the establishment of the claim of the intervenors, notwithstanding the confession of judgment by *English*, in favor of those intervenors. Several reasons have been offered in the written argument of the counsel for *Todd & Haven*, against the objections taken to the insufficiency of the evidence adduced by them. It is said that *Cammack* admitted their claim, as proved by the testimony of *Marks*. We think there is nothing in the testimony which would authorize the belief that, *Cammack* dispensed with the formalities of law, or his rights as a litigant. It is an error to suppose that *Moore*, in his intervention, asserted the enforcement of the privilege of *Todd & Haven*, arising from their alleged debt as being part of the price. *Moore* claimed only the amount of his two notes, with privilege. It is

CAMMACK
*v.*
GRIFFIN.

also stated that the pleadings do not deny the claim. A confession of judgment in favor of these intervenors, by *English*, the master and owner of the steamer, was filed on the 16th January, 1846, and, on the 21st of February following, the allegations and rights of the intervenors were formally put at issue, by an answer to the petition of intervenors by the plaintiff.

The intervention of *Todd & Haven* is not sustained by evidence, and therefore falls; and the balance, $2517 67, is subject to the attachment of the plaintiff, who has judgment for a sum exceeding that amount.

It is therefore decreed that the judgment of the Commercial Court, in favor of *Todd & Haven*, trustees, and of *Moore*, be reversed, and that the sum of $2,517 67 be held subject to the attachment of the plaintiff, and that the appellees pay the costs of this appeal; in other respects, the judgment of the Commercial Court is affirmed,