No. 1912.—Austin, Thorpe & Co. and others *v.* Da Rocha, Becker & Co.—Mrs. Pelanne and others, opponents.

A seizing creditor can not disregard a sale of an interest in a store, on the ground that it is made in fraud of the rights of creditors.

Before he can maintain a seizure in such a case, the sale must be declared null by direct action. The rule is different in case of a simulation. In the latter case seizure may be made and the property sold without reference to the sale.

A *bona fide* purchaser of an interest in a store, whereby she becomes a partner *in commendam*, does not lose her rights by declining to enjoin the sale of the store which is under seizure. The rights of a partner *in commendam* may be enforced as well by third opposition against the proceeds of the sale. But in the latter case the amount which the property brought at sheriff's sale, will be taken as the basis on which the proceeds are to be distributed, unless it be shown that there was fraud or other ill practices in the sale which led to the sacrifice of the property.

The privileges existing on the stock of goods for the salaries of clerks, which have been ascertained and recognized by third opposition, will be first paid out of the proceeds of the sale of the property by the sheriff, unless as in this case the partner *in commendam* expressly assumed to pay them.

These privileges of clerks for salaries on the goods in the store are not lost or impaired by a simulated sale and transfer of the store to other parties; nor does the taking of a note by a clerk for his salary novate the debt nor destroy the privilege.

APPEAL from the Fourth District Court, parish of Orleans. *Theard, J. Collens & Wooldridge* and *J. Ad. Rozier*, for plaintiffs and appellants. *C. Dufour* and *J. Q. A. Fellows*, for appellees.

Wyly, J. The plaintiffs who are appellants, obtained respectively judgments against the defendants in December, 1866. Under executions issued thereon, the contents of the stores Nos. 136 Chartres street and 147 Canal street, were seized on the twelfth of June, 1867, as the property of the defendants. The legality of the seizure of the Canal street store and the proceeds of the sales of both the stores, form the subject of the present controversy.

A few days before the sale Mrs. Raymond Pelanne claimed an interest in the contents of the store 147 Canal street, to the extent of $12,000, as partner *in commendam* of one J. D. Meredith, whose name at the

Austin, Thorpe & Co. and others v. Da Rocha, Becker & Co.—Mrs. Pelanne and others, opponents.

time of seizure was on a sign over the door. She did not enjoin the sale, however, but on the sixth of July filed a petition of third opposition, reciting her interest and praying as follows : "That an order be issued to the effect that, if the said sheriff should persist in selling, the proceeds of said sale may be retained and kept in his hands until the determination of this third opposition and petition for damages ; that the sheriff, H. T. Hays, of New Orleans, and the seizing creditors aforesaid, Austin, Thorpe & Co., Butler & Pitkin and Wright, Brinkerhoff & Co., be severally cited; that said Harry T. Hays, sheriff, together with said seizing creditors (if they can be found), be condemned *in solido* to pay your petitioner the sum of twelve thousand dollars, being the value of her property wrongfully seized and taken away as aforesaid, and the further sum of —— dollars per month for rent as stated above from the first of June last, until the determination of this suit; and the further sum of one thousand dollars as special damages for counsel fees, in prosecution of the present claim. and all costs, with privilege on the proceeds of said sale, for general relief," etc.

The court *a qua* ordered the sheriff to retain in his hands all the proceeds of sale, including those of the sale of the contents of the store 136 Chartres street, to which Mrs. Pelanne made no claim.

Several oppositions were filed by parties whose claims were rejected by the court *a qua*, and who have not appealed.

The following parties made oppositions, claiming privilege as clerks under article 3158 of the Civil Code, viz:

Charles Baudier, for $56 52; H. Meridier, for $97 91; J. S. Shaw, for $193 52; James T. Howard, for $691 10; Daniel Van Allen, for $900.

The claims of the first three were allowed. The claims of Howard and Van Allen were rejected on the ground that they had lost their privilege by novation of their debts, and they have appealed.

The plaintiffs answered Mrs. Pelanne's opposition by a general denial, and specially denied the title set up by her, and averred that if she had any title it was void and of no effect against them; that it was simulated and fraudulent, and the result of a conspiracy to cover and conceal the property of the defendants, Da Rocha, Becker & Co., from their creditors, and especially from the plaintiffs.

The judge *a quo* was of the opinion that as to the claim of Mrs. Pelanne the only question was simulation or not; that the transaction by which she claimed an interest in the store 147 Canal street, to the extent of $12,000, was a real one; that she was in possession of the interest thus claimed through Meredith; that the seizure of the goods by the plaintiffs, and their sale, involved the loss of her interest and that she must be indemnified for her loss by the allowance to her of all

the proceeds of sale of this store, except the amount of certain privileged claims.

The proceeds of the store on Chartres street were consumed in costs.

The plaintiffs appealed and were joined as stated above, by two of the clerks.

As to the third opposition of Mrs. Pelanne, we agree with the District Judge, that the only question is simulation or not If her part ownership of the contents of the store, 147 Canal street, was real, though acquired in fraud of the rights of the plaintiffs, their seizure of that store was illegal; her rights could not be assailed in that manner, and her opposition must be maintained.

Whether she saw fit to enjoin the sale or not, can not prejudice her rights in the premises. C. P. 400.

It is only simulated sales that the seizing creditor is permitted to disregard, because they pass no title and are not subject to the rules of real contracts operating injuriously to creditors.

If this opponent has an actual title, accompanied with possession, the plaintiffs who have thus assailed it, will not be heard setting up fraud in the transfer; that ground of nullity they must seek in a direct action.

An examination of the evidence satisfies us that the claim of the opponent, Mrs Pelanne, was not fictitious; as to her the transaction was not a simulation; that for a valuable consideration she became a partner *in commendam*, acquiring a part ownership of the store as claimed, and had possession thereof through the partnership of which she was a member, the possession of a partnership being for each of the partners.

There is no doubt, however, that as to the defendants there was a bold simulation and fraud attempted; that Samuels and Meredith were merely interposed with fictious titles to cover the turpitude of the defendants; that these parties merely held for the defendants, who never parted with actual title until they caused the transfer to be made to the third opponent, Mrs. Pelanne

We regard the partnership with Meredith and the transfer from Samuels as but the consummation of one transaction which was conducted by the defendants, doubtless, for the purpose of defeating their creditors. But, because Mrs. Pelanne was induced by these designing men to buy an interest in the store and to form a partnership with Meredith, a party interposed, does it follow that her title to a share of the store was a simulation, in the face of evidence that she paid a real consideration therefor? Is an actual contract of sale to be treated as a simulation, because the object of the contract had previously been acquired by the vendor under a simulated transfer? We think not Mrs. Pelanne may, perhaps, be guilty of a constructive fraud in thus

dealing with these dishonest men and obtaining a preference over other creditors, but of this the plaintiffs can not inquire in this form of attack.

Her contract with them was a real one; it is subject to the rules governing actual contracts, and can not be treated as a simulation.

The fact that she continued to hold the notes which the defendants had given her for borrowed money, did not invalidate her engagement in purchasing an interest in the store, because after the purchase, these notes, being part of the consideration, ceased to be valuable to her; the debt which they evidenced having been settled, she might at any time be compelled to surrender them.

But the plaintiffs insist that as evidence of fraud was received without objection, the case was tried on that issue; and that it has been decided that, where the parties try the question of fraud, the opponent can not afterwards demand that the seizing creditors be compelled to resort to a revocatory action; and they cite Dejean v. Blacketer, 13 An. 595, and Stewart v. Scudder, 10 An. 216, as authorities on that point.

It is true, evidence of fraud was received, but, from the written opinion of the judge a quo, we think the case was not tried by the parties on that issue, for he says no fraud was pleaded. The case referred to in 10 An. 216, is not in point. In Dejean's case, 13 An. 595, where the absconding debtor's property was attached before any consideration was given for the pretended sale, there is an express recognition by the court of the settled jurisprudence of this State, that, where an actual title has passed, accompanied with possession, its validity can not be tested by attachment or seizure, but a direct action must be brought to avoid the contract as fraudulent.' In that case, however, it was held that, as the answer to the opposition set up fraud and simulation and prayed that the sale be annulled, and as no exception was made as to the regularity of the proceedings, and as the parties to the suit had tried the question of fraud, the court felt it to be their "duty to inquire if the sale was fraudulent, and not to reverse the decision on the ground that the party ought to have instituted a revocatory action." * * In the case before us it does not appear that there was a waiver of technicalities, as in that case, by the parties trying the question of fraud in the court below. Nor do we find, in the answer of the plaintiffs to the opposition, a prayer that the sale be annulled for fraud, as there was in the case last referred to

The case before us was tried with the other oppositions, and it can not fairly be said that the opponent, Mrs. Pelanne, consented to try the question of fraud with the plaintiffs; especially as she insisted that her demand was a distinct suit and was entitled to be tried separately, and, for fear of prejudicing her rights, took a bill of exceptions to the ruling of the court requiring all the oppositions to be tried together.

We see no reason in the case before us to depart from the rule of practice applicable to actual contracts sought to be annulled for fraud.

Our conclusion is, that the opposition of Mrs. Pelanne was well taken, and that she has been damaged to the extent of her interest in the contents of the store 147 Canal street, and should be indemnified by a judgment, as prayed for, against the sheriff and seizing creditors, for her share of the value of the property thus disposed of by the sheriff, and which can not be returned to her. She has failed to show that she has sustained any further damage than the loss of her share of the property sold, which has not been shown to have had a greater value than the price for which it was sold by the sheriff.

The fact that she gave $12,000 for a share of twelve twentieths in the store on Canal street, on the eleventh of January, 1867, does not prove that her interest in the stock on hand on the twelfth of June, following, when the seizure was made, was worth that sum.

In the absence of other proof, we will presume the value of the goods and the fixtures of the store 147 Canal street, at the day of sale was the price for which they were sold by the sheriff, to wit: $9576 45; and the amount for which Mrs. Pelanne should have judgment, is for the value of her share of the property thus ascertained, after deducting the privilege claims of the clerks, but not the costs of the sale. We think the privilege of the clerks for their salaries was not lost by the simulated transfers made by the defendants, and they should be paid out of the proceeds in the hands of the sheriff, and of this Mrs. Pelanne can not complain, because in the transfer from Samuels she also assumed to pay them.

We think the court erred in rejecting the claims of Howard and Van Allen on the ground that they were novated; there is no proof that novation was intended by the parties when the notes were given, and it is never presumed. 13 An. 238; 4 An. 509; C. C. 2181, 2188; 4 N. S. 95. As Mrs. Pelanne has not asked that the sale of the sheriff be annulled, we will not so order it; but will allow her judgment for damages, as claimed, without interest, because none has been prayed for, and without a privilege on the proceeds of the sale, because we are aware of no law entitling her to it.

It is therefore ordered that the judgment appealed from be amended by striking out that part thereof in favor of the opponent, Mrs. Pelanne, and it is now ordered that she recover judgment *in solido*, against the sheriff and the plaintiffs herein, for forty-five hundred and eighty-two dollars and forty-four cents, ($4582 44), being twelve-twentieths of $9576 45, the amount of the sale, less $1939 05, the amount of the privilege claims of the clerks. It is further ordered that said judgment be amended by allowing the claim of James T.

Howard for six hundred and ninety-one dollars and ten cents, ($691 10), and also the claim of Daniel Van Allen for nine hundred dollars, ($900), to be paid, each by preference, out of the proceeds of the sale in the hands of the sheriff; and that the seizing creditors be entitled to the balance of the said proceeds.  As thus amended, it is ordered that the judgment of the court *a qua* be affirmed.

It is further ordered that Mrs. Pelanne pay costs of plaintiffs' appeal, and that plaintiffs pay costs of the appeals of the opponents, Howard and Van Allen.