## BATES–CRUMLEY CHEVROLET CO., Inc., v. BROWN et al. *

### No. 4224.

Court of Appeal of Louisiana. Second Circuit. Second Division.

May 4, 1932.

Argued before STEPHENS, TALIAFERRO, and CULPEPPER, JJ.

Dickson & Denny, of Shreveport, for appellants.

Blanchard & Pyburn, of Shreveport, for appellee.

**CULPEPPER, J.**

Plaintiff sold and delivered to defendants an automobile for the price of $501, on terms recited in the written act of sale as follows: $200 on or before delivery, leaving a deferred balance of $301, for which purchasers executed one note. To secure the payment of the note the seller reserved the vendor's lien, and the purchasers granted a chattel mortgage upon the automobile.

While the act does not so disclose, the pleadings and testimony in this case show that the purchasers, defendants herein, instead of paying the $200 in cash to cover the recited cash part of the consideration, delivered, without their indorsement, to, and which was taken and accepted by, the plaintiff, vendor, a certain promissory note which had been executed by one S. J. Fair, made payable to M. D. Brown, father of defendants, in the sum of $200 with interest and attorney's fees thereon, and which M. D. Brown still held at the time. The note, although long past due, had not been paid. M. D. Brown, it appears, in order to accommodate the defendants, who were his sons, indorsed the note in blank, and subsequently turned it over to plaintiff, which was accepted in lieu of the cash payment called for in the act of sale. Defendants did not indorse the note, nor were they required or asked to do so.

After fruitless efforts by plaintiff to collect anything on this note, either from the maker or payee, this suit was filed seeking judgment against these defendants in solido for the amount called for by the note in principal, interest, and attorney's fees. The note is dated October 28, 1929, matured on the day of its date, and bears 8 per cent. interest from maturity, and 10 per cent. additional as attorney's fees in the event it should be placed in the hands of an attorney for collection.

Plaintiff alleged it has a vendor's lien upon the automobile to secure the payment of the note, caused the automobile to be sequestered, and prayed for recognition and enforcement of its alleged lien.

Defendants filed an exception of no right or cause of action and motion to dissolve the writ with damages and attorney's fees. Two supplemental and amended petitions were filed, to which objections were made. Additional exceptions were made by defendants. The motion and exceptions apparently being referred to the merits by the court, defendants, reserving their rights under the exceptions, answered, admitting the facts substantially as above set forth, but denied personal liability upon the note or for any sum whatever. They also denied plaintiff's alleged lien upon the car. They prayed that plaintiff's demands be rejected, with the dissolution of the writ, and for damages previously prayed for in the motion.

There was judgment for plaintiff against defendants in solido in the sum of $200 with legal interest from judicial demand; recognized plaintiff's alleged vendor's lien upon the automobile, with maintenance of the writ; and defendants appealed.

There appears to be very little dispute as to the facts, which are substantially as above stated.

■ We do not think these defendants are liable personally. Plaintiff appears to rest its claim, not upon the note, but upon the fact that the written act of sale stipulated for the payment of a sum of money which was not done. It is contended that the case is governed by the stipulations of article 2131 of the Civil Code, which provides that payment means the delivery of a sum of money when such is called for, or the performance of that which the parties respectively undertook. It is argued that there was no undertaking by the parties in this case to do anything, but that defendants promised to pay $200 which meant money. It is contended that the fact that defendants gave, and the plaintiff accepted, such a note as is shown here, in the place of the money, did not extinguish their obligation to give that which the contract called for, if the thing given turned out to be valueless; hence defendants are still bound to perform by giving the money itself. Plaintiff also contends that the only method applicable to this case by which the obligation could have been extinguished, if at all, was by novation, in which case it would have to be shown that defendants were expressly discharged from the obligation, which has not been shown. Article 2190 of the Code, it is urged, provides that novation cannot be presumed; that the intention to make it must clearly result from the terms of the agreement, or by a full discharge of the original debt; and that article 2192 provides that it does not take place unless the creditor has expressly declared that he intends to discharge his debtor who has made the delegation.

The point here raised by plaintiff's learned counsel, that the creditor must expressly release the debtor in order that novation can be said to take place, was discussed at length by the Supreme Court in the early case of Barron v. How, 2 Mart. (N. S.) 144. In that case the facts were that plaintiff sold a bill of merchandise on open account to the partnership of which defendant was a member. Statement was made out in the name of the partnership, invoices sent to David Talcott, another member of the firm, who executed and sent to plaintiff his personal notes to cover. Upon receipt of the notes, plaintiff accepted same, receipted the account by writing at the bottom the words, "Received payment by David Talcott's notes at three and four months." Plaintiff contended that this did not expressly discharge the debtor, and

that unless the creditor has expressly declared that he intends to discharge his debtor who has made the obligation, there is no novation as provided by the Code; that no such express declaration had been shown, hence the original contract remains in force. The court in passing upon the question used the following language:

"Whether the words, used in this receipt, are such as clearly mark the intention of the creditor to consider the old debt extinguished, is the main question here. The answer to this query is found in one to which there can be but one reply given. That is, whether payment of a debt does not extinguish it. Here it is not pretended, that a certain thing was not given, and received in payment—and if it were, we are wholly at a loss to perceive how the old debt could still be considered as in existence.

"The argument for the plaintiffs, seemed to rest principally on a position, assumed by counsel, that when an obligation is contracted payable in money, nothing else can be a payment of it—and that when anything else is accepted, the obligation is suspended, but not extinguished, until that which has been received is converted into money. To this doctrine we can by no means assent. The most natural way of extinguishing every obligation is, certainly, to fulfill one's promise in giving the very thing due, and this is, perhaps the proper sense of the word. * * * But it is clear, that in the general acceptation of the word, it means every way by which the creditor is satisfied, or ought to be, and the debtor liberated, and it is equally clear, and of daily occurrence, that one thing may be given in place of another, in payment, and that if accepted, the payment is good, and the obligation extinguished."

By way of illustration the court quotes from Toullier, the following:

"If, says he, I owe you a sum of money, and have given for the security of the debt a mortgage, should you consent to receive, in payment, a tract of land, from the moment the sale is complete, the first obligation, with all its accessions, is extinct, although you should be afterwards evicted of the property sold."

While in the cited case the receipt was in writing, and in the present case there was no separate receipt given for the note to indicate for what purpose it was given, yet plaintiff alleges that it was given for and actually represented the $200 cash recited in the act of sale. Mr. Bates, the president of plaintiff company, testified that he took the note as the first payment, like he would a check, not for collection, but took it as the first payment. Max Brown testified that the note was accepted by plaintiff as the initial or down payment on the car. M. D. Brown testified to the same effect. He said he offered to let plaintiff have the note as the first

payment; that he (presumably Mr. Bates) said he would investigate it, and the next day came and said the note was perfectly good, and said, "I will take that two hundred dollar note as the first payment—" It appears clear, beyond any assumption, that the note was in fact accepted after investigation as to its value, as payment in full of the $200 and in lieu of the cash. This was, we think, clearly the intention of the parties.

On the question of express declaration of intention by the creditor to discharge the debtor, it was held in Walton v. Beauregard, 1 Rob. 301, cited under article 2192 of the Code, that, "There cannot be a more formal acceptance of a delegated debtor, than by suing him on his obligation."

In that case plaintiff had made no written express declaration of his intention to discharge his debtor whose note plaintiff held, and who sold to a third party the property for which the note was given as payment, and said third party had assumed payment of the note. Plaintiff, without objection to the sale, proceeded to collect on the note from the new debtor. After finally foreclosing on a balance unpaid and the property failing to sell for enough to liquidate the debt, plaintiff sued the original maker and obligor on the note, who pleaded novation. Held, that defendant was discharged. The court said:

"It is true, that in the act of sale from the defendant to Canon, the plaintiff did not intervene, and expressly declare, by signing the act, that he accepted Canon as his debtor; but his subsequent conduct shows that he so considered him, particularly when he instituted a suit to recover the debt."

The present case in this respect is very similar. It is shown, by plaintiff itself, that it made numerous efforts to collect the note from Fair, the maker, also from M. D. Brown, the payee and indorser, and finally sued them and got judgment. It is not shown that plaintiff looked to or even pretended to hold these defendants liable until after judgment had been obtained against Fair and Brown, and then not until fruitless efforts had been made even to collect on the judgment itself.

From the history of this case, as disclosed by the record, it is inconceivable to assume otherwise than that plaintiff intended to discharge defendants at the time, and has since, by its acts and conduct, expressly discharged them.

Furthermore the note, with the payee's indorsement in blank thereon, became negotiable and under the Negotiable Instrument Law (Act No. 64 of 1904, § 18), defendants are clearly not liable since they themselves did not indorse it.

Counsel cite the case of Adler & Co. v. Burton Lumber Co., 46 La. Ann. 379, 15 So. 156, 157, to the point that the taking of notes and giving a receipt in writing, reading, "received

payment by notes," does not amount to a novation. We do not think the cited case is decisive of the present one. In that case the syllabus by the court, which is indicative of the decision, reads:

"The vendor preserves his privilege though he takes notes for part of the price, and no presumption that he novates the debt and extinguishes the privilege arises from the fact that in acknowledging delivery of the notes he gives a receipt worded, 'I acknowledge receipt of the price, payment being satisfactory, and in notes,' especially when, by the contract, notes were to be given for part of the price, and, besides when it appears by the testimony no novation was intended."

The notes in question in the above-cited case were in fact notes given by defendant himself as representing part of the purchase price of the logs and as called for in the contract for the sale thereof. Thus is presented an entirely different state of facts from the case now before us, wherein defendants did not give (execute or endorse) the note here involved, nor was it given by any one pursuant to the recitals of the contract of sale of the automobile. In the cited case the court said:

"It was stipulated in the contract for the purchase of the logs that the notes were to be given for part of the price."

Certainly defendant was personally liable on the notes which he himself executed, and the vendor's lien existed to secure these notes because the contract itself called for them. The present case is altogether different in these respects. As stated by the court in the cited case, the words in the receipt, "payment in notes," themselves imply, not an absolute payment, but the giving of notes to represent the price. The court further said that there is no novation by the creditor merely because he takes notes from the debtor for the debt. That means taking notes executed by the debtor as representing the debt under the terms of the contract and therein called for. And the court in concluding states: "After all, the supposed relinquishment involves the question of intention." And: "We are aided, too, in this case by the proof in the record that there was no intention to novate."

In Austin, Thorpe & Co. v. Da Rocha, Becker & Co., 23 La. Ann. 48, cited by counsel, the court found that there was no proof of intention to novate. In Choppin v. Gobbold, 13 La. Ann. 238, also cited, the facts are not shown. The court merely said the defendant had failed to make out its defense; that the intention to novate must clearly result from the terms of the agreement, "or by a full discharge of the original debt." We think in the present case defendants have clearly shown a discharge by payment of the debt, and that such was the intention of the parties. It was not necessary that plaintiff receipt defendants. In the transfer of credits, rights, or claims upon a third person, the delivery takes place by the giving of the title. Civ. Code, art. 2642.

■ There is a difference between a check and a promissory note. A check represents money and is merely the vehicle or means of delivery of the money. Whereas, a note is a written engagement or promise to pay a certain sum of money at a time specified. It is the evidence of an obligation to pay. Succession of De Pouilly, 22 La. Ann. 97. When defendants delivered to plaintiff, or caused to be delivered, the note, it was a giving of the obligation of Fair, not theirs, unless they had indorsed the note. The fact that plaintiff accepted it in the place and stead of defendant's obligation without restriction or reservation, as the testimony shows it did, operated the release of defendants and transfer of their obligation for that of the maker of the note. Mr. Bates states he took the note like he would a check. If he did, it simply means he regarded the note as so much cash, which necessarily implied payment. The idea conveyed by the decisions above cited is, as we view it, that where it is shown that a note of this character is accepted in payment of an obligation, the obligation for which it is so given is considered as paid and extinguished. This is by no means the character of note as those involved in the Austin v. Da Rocha, Becker & Co. Case, which we have discussed.

■ As to the claim of a vendor's lien upon the automobile, the authorities, so far as we are able to find, hold that if the obligation to pay the purchase price is paid and becomes extinct, the lien likewise ceases. Abat v. Nolte, 6 Mart. (N. S.) 636; Cammack v. Griffin, 2 La. Ann. 179; McCan v. Fulkerson, McLaurin & Co., 26 La. Ann. 345; Durham v. Daugherty, 30 La. Ann. 1257; Oubre v. Town of Donaldsonville, 33 La. Ann. 389.

In the Abat v. Nolte Case, supra, which presents facts very similar to the present case, the court used the following language:

"It appears to us from the documents and evidence, that the price of the sale was to be paid by a draft, that trusting in the honor of the vendees, the vendors acknowledged the receipt of the price in the act of sale, and shortly after received the draft. After this they could not have any privilege; for the payment of the price was consummated according to the intention of the parties, and the form of the acts shows the vendors had no idea of retaining a privilege.

"But if even the original intention of the parties had not been that payment should be made by a draft, by receiving the draft in payment the vendors extinguished the original claim."

The act of sale in the present case shows that the $200 now claimed, and on which plaintiff bases its claim for a vendor's lien,

was for the initial cash payment on the car. In payment of this sum plaintiff accepted the note in question, and the lien was thereby extinguished. This claim is therefore rejected, and the writ of sequestration should be dissolved.

Defendants make claim for damages in the sum of $50 as attorney's fees for dissolution of the writ, for $1 per day from April 6, 1931, for loss of use of their automobile, and $50 for humiliation and embarrassment caused by the wrongful seizure. The minutes show that on April 20, 1931, testimony was adduced and argued and the case to be submitted on briefs. Since the answer was not filed until June 2, 1931, we take it that it was the motion to dissolve which was tried on April 20th, although the minutes do not show what was tried on that date. The case was tried on the merits June 2d, and on the 18th of that month the minutes show judgment was rendered rejecting plaintiff's demands and awarding $25 as attorney's fees for dissolution of the writ. (We do not find in the record any signed judgment to this effect.) On July 20th, the minutes show motions for rehearing on the motion to dissolve, and on the merits, were filed, argued, and submitted; and on August 10th both motions were overruled and judgment read and signed. Yet the only judgment found in the record is of date August 10th, and this is the judgment from which the appeal has been taken. Such inconsistencies, omissions, and irregularities, we must say, are beyond our conception of a court of record, and make it hard for an appellate court to determine the status of a case. However, since no complaint as to these irregularities has been made by either party before this court, and both parties apparently wishing to have a decision upon the real merits of the case, we have disregarded the irregularities and have confined ourselves to the merits.

■ If the motion to dissolve was tried separately from the merits, and we take it that it was, defendant is entitled to recover attorney's fees on the dissolution of the writ. And if the lower court allowed $25 as such, which apparently it did, we are inclined to think the amount reasonable and justifiable. As for the other damages claimed, no award appears to have been allowed, nor was there any testimony upon which an award could have been made; therefore, they are rejected. We have concluded to set aside all decrees and judgments rendered, whether signed or not, and to render such a judgment as should have been rendered in the first instance.

The judgment appealed from is therefore reversed and set aside, and there is now judgment rejecting wholly plaintiff's demands, and dissolving the writ of sequestration sued out. It is further adjudged and decreed that defendants have judgment against plaintiff in the sum of $25, with legal interest thereon from rendition hereof until paid, as attorney's fees for the dissolution of the writ of sequestration. It is further decreed that plaintiff pay costs of both courts.