WALTON & SON *vs.* BEMISS ET AL.

APPEAL FROM THE COURT OF THE FIFTH DISTRICT, FOR THE PARISH OF ST.
MARY, THE JUDGE OF THE SIXTH PRESIDING.

Where a creditor at the foot of an account, in which he has a privilege on
the property sold, gives a receipt, stating he has "*received payment by note
payable at four months*," it is *a payment* of the account, and extinguishes
the privilege.

Where attacking creditors commence their revocatory actions about the
same time, and use proper diligence, one shall not have exclusive privilege
on the property fraudulently conveyed and recovered, simply because his
suit was first commenced. The property must be divided *pro rata* among
them.

This is an action instituted the 10th April, 1835, by the
plaintiffs, to recover from the defendants, Bemiss, Brashear &
Co., the amount of a note for the sum of nine hundred and
eighty-eight dollars and fifty cents, being the amount of an
account for the sale of a carriage and gig, sold by them to
said firm, and dated the first May, 1834.

The plaintiffs allege that they have a privilege on the
carriage or its proceeds, which is worth six hundred and sev-
enty-five dollars, but that in November, 1834, Bemiss, one of
said firm, and insolvent, attempted to make a transfer and
sale of it, on his own account, to one Judson Harman, Milton

Johnson, and Joseph S. Tarkington, and actually delivered the same to Harman in pursuance thereof.

They allege that said sale is null and void, as made without consideration, and in fraud of creditors, to the knowledge of the vendees, and pray that it be annulled, the carriage sequestered, and they allowed the benefit of their privilege.

Harman pleaded a general denial, and averred that he purchased the carriage for a valuable consideration, from J. B. Bemiss, and in good faith.

On the 21st April, 1836, there was judgment by default made final against the defendants, Bemiss, Brashear & Co., for the amount of their note; and annulling the sale as to Tarkington and Johnson.

The case was left open between the plaintiffs and Harman. At this stage of the proceedings, Dwight and Hartman intervened, and set up claims against the defendants Bemiss, Brashear & Co., alleging that the latter were in insolvent circumstances at the time of the sale of the carriage, and that it is null; that the plaintiffs have no privilege; but having previously instituted suit against the present defendants, they (intervenors) should be preferred. They pray that the vendor's privilege on said carriage be rejected, and the proceeds of the sale of it held subject to their judgment.

To this petition of intervention, the plaintiffs pleaded a general denial; but join in the alleged nullity of the sale to Harman, and insist on the enforcement of their privilege on the price of the carriage.

Upon these pleadings and issues, the parties went to trial.

The plaintiffs produced their account of sale of the carriage and a gig, of the 1st May, 1834, amounting to nine hundred and eighty-eight dollars and fifty cents; at the foot of which was the following receipt.

"*Received payment by note, payable at four months,* with the understanding that if the note is not paid when due, Messrs. Bemiss, Brashear & Co., are at liberty to give a city acceptance, adding interest at six per cent. until paid. "

"M. WALTON & SON."

WALTON & SON
vs.
BEMISS ET AL.

There were many witnesses examined on both sides, touching the insolvency of Bemiss at the time of making the sale of the carriage to Harman, and also to establish the claims of the intervenors. It was also shown that the intervenors instituted the revocatory action about the same time that the plaintiffs commenced the present suit, and that both suits were brought to the April term, 1835. The intervenors joined in this suit to dispute the plaintiffs' right of preference.

From all the evidence, the district judge decided that the sale of the carriage was null and void; that the plaintiffs be allowed their privilege on the carriage, or its proceeds, worth four hundred and seventy dollars, against Harman, and the claims of the intervenors were dismissed. Dwight & Hartman, the intervenors appealed.

*T. H. Lewis,* for the plaintiffs, insisted on the affirmance of the judgment. The plaintiffs were entitled to a privilege on the carriage, being the vendors, and should be allowed the proceeds in preference to the intervenors.

*Splane,* for the intervenors, objected to parole evidence being received to show the consideration of the note sued on. Its consideration is not attacked as fraudulent, and the admissions of Bemiss, the insolvent debtor, are not evidence. The intervenors should be allowed and paid by preference, having commenced the revocatory action first.

*Martin, J.,* delivered the opinion of the court.

The plaintiffs sue on a note of the defendants, Bemiss, Brashear & Co., given for the price of a carriage, and claim a privilege on the carriage as vendors. For this purpose, they brought in the defendant Harman, who had purchased the carriage from Bemiss, his co-defendant, and they claim a rescission of the sale, as having been made in fraud of their rights, as creditors of Bemiss, Brashear & Co., who they allege were insolvent at the time of the sale, to the knowledge of Harman.

The plaintiffs had judgment on the note.

Dwight & Hartman now intervened, stating themselves to be creditors of Bemiss, Brashear & Co., and also claiming the rescission of the sale of the carriage, on the same ground as the plaintiffs, whose privilege they oppose. They claim the carriage or its price, to the exclusion of other creditors, on the ground that they had judgments against Bemiss, Brashear & Co.

There was final judgment recognizing the privilege of the plaintiffs, rescinding the sale of the carriage by their vendees, and dismissing the petition of intervention. The intervenors appealed.

Their counsel has urged that the privilege ought not to have been allowed. They show that the plaintiffs gave a receipt for the note, at the foot of the account, *in payment of it.*

The plaintiffs' counsel has replied, that the giving of a note *for* a debt, on an open account, is no *payment of* the debt. This is certainly true, but nothing prevents the debtor and creditor agreeing that the note *shall be* a payment. In this case the note was expressly receipted for, and taken in payment. We have held, that the receipt of a note, for the amount of an account, is neither payment or novation, but that the receipt of a note of a third person *in payment* of an account discharges it. We are now called upon to say whether there is a difference between receiving the note of the debtor *in payment,* and the receipt of the note of another. It does not appear to us there is any difference. The creditor has an interest in taking a note. It liquidates his debt, facilitates his proof, and enables him to raise money by discount. It was for the creditor to consider whether these advantages were an equivalent for the release of the privilege. The debtor places himself, by giving a note, in *duriori casu*; punctuality is more rigorously required and exacted of him. The dread of a protest compels him to exert every nerve to maintain his credit. If he has, or afterwards acquires, a claim against the creditor, he foregoes the right of offering compensation. On this consideration we conclude the privilege was improperly allowed. The words of the plaintiff

*Where a creditor, at the foot of an account in which he has a privilege on the property sold, gives a receipt, stating that he has " received payment by note, payable at four months, it is a payment of the account, and extinguishes the privilege.*

must be taken most strongly against him, and a discharge and liberation of the debtor is favored. In *dubiis semper quod minimum est sequimur.*

The intervenors and appellants claim a preference over the plaintiffs, on the ground that they are judgment creditors, and that they instituted their revocatory action before that of the plaintiffs. Their suit was instituted in the month of February, 1835, and that of the plaintiffs, the 10th of April following. Both suits were brought to the same term of the District Court, and judgments signed on the same day, at a subsequent term. We know of no privilege resulting from a judgment on moveable property, unless execution has issued thereon. In the revocatory action, the *Louisiana Code, article* 1972, provides that, "the judgment in this action, if maintained, shall be that the contract be avoided as to its effects on the *complaining creditor,* and all the property or money taken from the original debtor's estate, by virtue thereof, or the value of such property, to the amount of the debt, be applied to the payment of the *plaintiffs.*" We think the fair and equitable meaning of the article is, that when creditors commence the prosecution of their rights about the same time, and use proper diligence afterwards, that one should not have an exclusive privilege on the property, simply because his suit was first commenced. It would be an unjust interpretation to give the law, in many cases. The case might be different, if it was apparent that one of the creditors had slept upon his rights, and neglected to assert them with reasonable diligence.

*Where attacking creditors commence their revocatory actions about the same time, and use proper diligence, one shall not have an exclusive privilege on the property fraudulently conveyed and recovered, simply because his suit was first commenced. The property must be divided pro rata among them.*

It is, therefore ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and reversed, so far as it decrees that the plaintiffs, M. Walton & Son, have a privilege, as vendors, on the carriage which was sold to Judson Harman; also, so far as it decrees that said carriage shall be given up, or the value thereof, to wit, four hundred and seventy dollars be paid exclusively for the benefit of plaintiffs, and, also, in decreeing the dismissal of Dwight & Hartman's intervention : And proceeding to give such judgment

as ought to have been rendered by the District Court, it <span style="float:right">Western Dist.</span>
is ordered and decreed, that Judson Harman do pay into court, <span style="float:right">*September*, 1840.</span>
without delay, the sum of four hundred and seventy dollars, <span style="float:right">DWIGHT &HART-</span>
for the use of the said plaintiffs, M. Walton & Son and <span style="float:right">MAN</span>
<span style="float:right">*vs.*</span>
Dwight & Hartman, and judgment is given in their favor, <span style="float:right">BEMISS    ET AL.</span>
against him for that sum, which is to be divided between
said Walton & Son and Dwight & Hartman, *pro rata,* the
amount of the claim of Walton & Son being established by
the judgment of the District Court, that of Dwight & Hart-
man being established by the judgment of the same court, in
the case No. 286, subject to such deductions as may be made
from it, in case the note of J. H. Allen shall be decreed as a
credit on it, or a recovery effected against John E. Carson
and Thomas Johnson.   The aforesaid judgment is affirmed
in other respects, the plaintiff paying all the costs in this
court, also, those of the intervenors in the court below.