ROSS & ADDISON *v.* D. M. PRITCHARD, Sheriff, et al.

The effect as regards creditors, of a judgment annulling a sale made by their debtor as fraudulent is the same, whether pronounced in a direct revocatory action, or in an injunction suit arising out of the seizure of the property by one of the creditors.

If no objection is made to the form of proceeding, the sale may be declared fraudulent in one form as well as the other.

Where a creditor has treated with the transferree of his debtor's property, as the real owner, he will be estopped from contesting the validity of the sale.

APPEAL from the District Court of the Parish of Catahoula, *Mayo*, J. *Cuny & Hawkins*, for plaintiffs. *Smith & Spencer*, for defendants and appellants.

MERRICK, C. J. The controversy in this case grows out of the proposed distribution of the proceeds of a tract of land sold at Sheriff sale.

It appears that the judgment debtor, *Henry Evans*, in January 26, 1858, prior to the rendition of the judgments against him, transferred certain real estate to *Thomas D. Evans*, for the price of $6000, on a credit of one and two years.

In the month of May following, the plaintiffs, *Ross & Addison*, and the defendants, *Taylor & Raddin*, obtained judgments against *Henry Evans*.

*Ross & Addison's* judgment was recorded on the 14th, and *Taylor & Raddin's* on the 20th of the same month.

*Taylor & Raddin* and some other judgment creditors disregarded said sale from *Henry* to *T. D. Evans*, so far as to seize the property.

*Thomas D. Evans* enjoined the sale. On the issue formed on the injunction, the sale was declared simulated and, *fraudulent* by the decree of the court.

Whilst the controversy was pending between *Taylor & Raddin* and the other seizing creditors, *Ross*, surviving partner of his firm, took a mortgage from *T. D. Evans*, who had assumed the debt, and bound himself *in solido* with *Henry Evans* for the same.

The instrument also recited, that the validity and legality of said transfer was in litigation, and stipulated, in the event said transfer should be set aside before the 1st of January, 1860, and the whole or any part of said debt remained unpaid, that then *this* mortgage should be good against *Henry Evans*. It was further stipulated, that " *the duration* of this mortgage shall expire on the first day of January, 1860 "; that *Ross & Addison's* execution should be returned and released, and that " all further legal proceedings against said property, so far as said debt aforesaid is concerned, shall be suspended until said first day of January, 1860."

After the dissolution of the injunction in the controversy with the other creditors, and on the day of sale, *Ross & Addison* placed an execution in the hands of the Sheriff, and the present proceeding is to compel the Sheriff to pay over the proceeds to them, as having the oldest judicial mortgage against *Henry Evans*.

The District Judge being of the opinion that, inasmuch as the sale was not declared simulated and fraudulent in a direct action, the property must be considered as subject to the judicial mortgages of *Henry Evans*, and distributed accordingly.

Whether there be any distinction between the fraudulent and simulated sale, as to their effects when avoided by creditors, we do not think important to decide.

Ross
*v.*
Pritchard

But it does not seem that there exists that difference between the direct revocatory action, by regular suit, and the same demand by way of reconvention, in answer to the injunction, where the sale is claimed to be fraudulent. The issue is the same, although made up in different modes; if no objection be made, the sale may be declared *fraudulent* in one form as well as the other, and the consequences of the decree, when rendered, ought to be the same.

Among the seizing creditors, if the sale were declared fraudulent, the proceeds ought to be distributed *pro rata*, and this is the consequence of the argument urged by defendant's counsel before this court. See 16 La. 144.

But the plaintiffs are estopped from contesting the reality of the sale from *Henry Evans* to *T. D. Evans*. They have treated with the latter as owner, and taken a stipulation from him as surety *in solido*, and a mortgage to secure the debt. He is, therefore, their author as to such mortgage, and they have prolonged the period of payment.

Now, suppose the executions of *Taylor & Raddin* and others had been returned, could *Ross & Addison* legally have issued execution either before the 1st of January, 1860, or afterwards, against *Henry Evans*, and seized this property of *T. D. Evans?* It is clear they could not, and that they would be driven to their conventional mortgage. How, then, can they avail themselves of a sale made upon the execution of other parties, when they could not legally execute the same property on the execution which they issued in their own names. They cannot hold *Thos. D. Evans* bound *in solido* as surety, and deny his ownership of the property.

The dismissal of plaintiff's suit will leave the distribution among the other seizing creditors open.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed, and that plaintiffs' demand be rejected, and that they pay the costs in both courts.