## Case No. 14,342.

### UNDERWRITERS' WRECKING CO. v. The KATIE.

[3 Woods, 182.] [1]

Circuit Court, D. Louisiana. Nov. Term, 1878.

MARITIME LIENS—DEBT FOR WORK AND MATERIALS —NOVATION—PRIORITIES OF LIENS— MORTGAGE.

1. Where a creditor receives, in satisfaction of his debt, the note of or a draft upon a third person, it is a novation of the debt, which is thereby extinguished, with all its accessory rights and privileges.

[Cited in Gest v. Packwood, 34 Fed. 375.]

2. The owner of a steamboat in process of construction drew drafts in favor of the builder upon a third person, who accepted them. The builder received the drafts in payment and receipted his account for work and materials; the drafts were renewed and the renewed drafts protested for non-payment, but no steps were taken to charge the indorser. *Held*, that the debt for work and materials was novated.

3. A lien given by the local law of Kentucky upon a steamboat for work and materials furnished in that state for her construction will be postponed by a United States court sitting in Louisiana, to a subsequent mortgage, duly recorded according to the act of congress, in New Orleans, where she was registered and enrolled, and which was her home port at the date of the mortgage and of its registration.

[Cited in The General Tompkins, 9 Fed. 621; The Rapid Transit, 11 Fed. 332.]

[Appeal from the district court of the United States for the district of Louisiana.]

The steamboat Katie was built by one J. M. White, her owner, at Louisville, Kentucky, in the year 1870. After she was launched, John B. Davis performed labor and furnished materials in equipping the boat with boilers, engine, etc. His bill amounted to somewhat more than $50,000. His contract with White was that he was to be paid mainly in cash and the residue in drafts on one J. Pinckney Smith, of New Orleans. After the work was done by Davis, he received drafts on Smith, which Smith accepted, for the balance due on his account for labor and materials, and receipted the account in full. The drafts were not paid at maturity, but were renewed. On March 7, 1872, White sold the Katie to one Miles Owen, who substituted his own drafts on J. Pinckney Smith for a portion of those drawn by White and held by Davis. These and the renewed drafts still held by Davis were not paid at maturity. They were protested for non-payment, but no notice of demand and non-payment was given, so far as appeared to the drawers. At the time that Davis furnished the materials for and performed the work above spoken of, on the Katie, the laws of Kentucky gave mechanics and others a lien on steamboats, etc., for work and materials done or furnished towards the building and equipping of such steamboats within the state of Kentucky. "with a preference or priority over any other debt of the owner ex-

cept to the officers and hands, and over all other liens thereafter contracted." Before the steamer was sold to Miles Owen she was enrolled in the office of the collector of customs for the port of New Orleans, and New Orleans continued to be her home port until her sale by the order of the court of admiralty. On August 29, 1872, Miles Owen, who was then the owner of the Katie, acknowledged by writing of that date his indebtedness to a large number of firms and individuals for supplies, etc., furnished his boat, and promised said creditors to pay them the sums due them respectively, and to secure such payment, he executed a mortgage on the Katie which, on August 30, 1872, was filed for record in the office of the collector of customs for the port of New Orleans, where it was soon after recorded. On November 29, 1872, the Katie was libeled in the district court for salvage. On January 11, 1873, she was sold by the order of the district court and brought, after the payment of costs and general admiralty liens, the sum of $20,-922.86. John B. Davis, on April 10, 1876, and June 10, 1876, filed interventions asking that his debt for work and materials which he alleged was represented by the drafts above mentioned might be paid out of said proceeds, and claiming to have a lien by the law of Kentucky therefor on said proceeds. On April 13 the mortgage creditors named in the mortgage of August 29, 1872, filed their petition claiming that their mortgage was the only lien on the proceeds of said steamboat, and praying that said proceeds might be applied to the payment of their claims, secured by said mortgage. The district court, after hearing the evidence submitted by these conflicting interveners, dismissed the interventions of Davis, and decreed that the proceeds of the sale belonged to the mortgage creditors. [See Case No. 13,426.] From this decree Davis appealed to this court.

Thomas Hunton, for John B. Davis.

Charles B. Singleton, R. H. Browne, and B. Egan, for Wilson, Fagan & Co., and other mortgage creditors.

WOODS, Circuit Judge. A consideration of the evidence in this case satisfies me that the debt due to Davis for his work done and materials furnished for the Katie was novated by the taking of the drafts of White on J. Pinckney Smith. The only parties to the contract for furnishing engine and boiler for the boat were J. M. White, her owner, and J. B. Davis. Davis was not examined, but White, who was, testified distinctly and repeatedly that the drafts drawn by him on J. Pinckney Smith were received by Davis in payment and settlement of the balance due Davis, and that their contract was that such balance was to be paid in that way. All the circumstances corroborate this view. Davis acknowledged payment of his account against White for labor and materials by receipting

1 [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

it in full. The drafts on Smith were all renewed at least once, and afterwards Davis received the drafts of Miles Owen on Smith in substitution for a large portion of the drafts of White. All these drafts were protested for non-payment, but no steps were taken to charge White, the drawer, and no claim of a lien upon the proceeds of the sale of the Katie was ever made by Davis until April 10, 1876, more than three years after her sale. It is true that J. Pinckney Smith testifies that the debt due to Davis was not to be considered as paid until the drafts were paid. But the weight of the evidence is decidedly in favor of the proposition that the taking of the drafts by Davis was intended both by him and White to be a novation of the debt—that Davis intended that his account should be settled and paid by the drafts.

When a creditor receives in satisfaction of his debt the note of or a draft upon a third person, it is a novation of the debt, which is thereby extinguished with all its accessory rights and privileges. Hunt v. Boyd, 2 La. 109; Walton v. Bemiss, 16 La. 140; Cammack v. Griffin, 2 La. Ann. 175; White v. McDowell, 4 La. Ann. 543; Wallace v. Agry [Case No. 17,096]; Maneely v. McGee, 6 Mass. 143; Watkins v. Hill, 8 Pick. 522. It follows, if my view of the facts is correct, that Davis has no lien against the proceeds of the sale of the Katie. But, conceding that there was no novation of the debt and that Davis had a lien by the law of Kentucky for the work and materials supplied by him in that state in the construction of the Katie, the question still remains whether that lien is to take rank in the distribution of the proceeds of the sale by this court, sitting in Louisiana and administering the laws of this state and of the United States, over a subsequent mortgage of the steamboat executed at this port, where the boat was registered, and enrolled and recorded according to the act of congress. If Davis had any lien on the Katie, it was by virtue of the local law of the state of Kentucky. The Lottawanna, 21 Wall. [88 U. S.] 558; The Edith, 94 U. S. 519.

Generally speaking, the courts of one country recognized the existence and validity of liens created by the law of foreign countries, but according to Mr. Justice Story this is not to be confounded with the giving them a superiority or priority over all other liens and rights justly acquired in the country where the court sits under its own laws. Story, Confl. Laws, § 323. In Harrison v. Sterry, 5 Cranch [9 U. S.] 289, Chief Justice Marshall says: "The words of the act of congress which entitle the United States to a preference do not restrain that privilege to contracts made within the United States or with American citizens. To authorize this court to impose that limitation on them, there must be some principle in the nature of the case which requires it. The court can discern no such principle; the law of the place where a contract is made is, generally speaking, the

law of the contract; that is it is the law by which the contract is expounded. But the right of priority forms no part of the contract itself. It is extrinsic, and is rather a personal privilege dependent on the law of the place where the property lies, and where the court sits, which is to decide the case." Under the law of this state the debt of Davis has no lien upon the Katie, because here registration is necessary to the validity of a lien. In the case of Lee v. His Creditors, 2 La. Ann. 599, the supreme court of this state held that privileges established by the laws of another state for work and labor furnished for the construction of a steamboat form no part of the contract itself, and cannot follow the property into this state, when no such privilege exists here. And in the later case of Swasey v. The Montgomery, 12 La. Ann. 800, the same court refused to recognize a lien upon a steamer given for tolls by the law of Alabama.

Without going so far as these decisions and denying Davis any lien whatever, I think it clear that the lien granted to him by the local law of Kentucky should not in this forum be allowed to override a lien authorized by a law of the United States, and perfected according to that law, over property situate within the jurisdiction of this court. I should feel bound to respect his lien, but I should also feel bound to postpone it to the lien of the mortgage creditors, under the facts of this case. The result is that the proceeds of the sale must be first applied to the payment of the claims of the mortgagees, and as the proceeds will be largely insufficient to pay those claims the intervention of Davis must be dismissed.