State ex rel. Houston *vs.* Burke.

## No. 7445.

### THE STATE EX REL. W. T. HOUSTON VS. E. A. BURKE, TREASURER, ET AL.

The holders of warrants for judges' salaries for any given year are entitled to be paid out of the general fund of that year, and where any part of that fund has been diverted, or is about to be diverted, to the payment of warrants not lawfully chargeable thereon, the appropriate writs will be issued to prevent such diversion and to compel the payment of the warrants for said salaries.

Where holders of other warrants intervene in the suit of the relators, praying the same relief, but not invoking any writ, their interventions can only be dismissed without prejudice to their right to seek relief by the proper writs.

Proceedings to bring back into the general fund moneys unlawfully diverted therefrom are assimilated to the actions of attacking creditors in revocatory actions instituted about the same time, where precedence is not given to the first in point of time, and therefore when the fund is not sufficient to pay all the warrants, those who have moved nearly together will share *pro rata.*

Preference cannot be secured by a holder of a warrant by taking out process against the Treasurer and Auditor, to the exclusion of holders of similar warrants.

In general, a holder of a warrant cannot obtain a preference in payment over other holders of similar warrants, by being the first to take out process against the Treasurer and Auditor, but where a fund has been or is being divided, those warrant-holders whose vigilance and prompt action alone restored that fund have the right to first payment out of that particular fund.

APPEAL from the Fifth District Court of New Orleans.   ROGERS, J.

*Blanc* and *Rozier* for Relators.   The Assistant Attorney-General for Respondents Appellants.   *Huntington*, and *Hornor & Benedict* for Intervenors.

The relator is the judge of the Fourth Court of New Orleans, and holds unpaid warrants for his salary for 1878 amounting to $2,200, which had been presented to the treasurer for payment, and were refused on the ground that there was no sum whatever to the credit of the General Fund of that year. The relator alleges that there is in the treasury $21,028.14, that belongs to the General Fund of 1878, and that the treasurer and auditor have unlawfully transferred this sum to the State-house Fund, and intend to pay with it a note for the purchase of the St. Louis Hotel as a State-house that does not fall due until April, 1879. Writs of *mandamus* and injunction were obtained, commanding the Treasurer and Auditor to place this

State ex rel. Houston *vs.* Burke.

sum in the General Fund and to pay the relator's warrants therewith, and injoining the Treasurer from paying it to the holder of the State-House note.

Three other judges, viz., Monroe, Tissot, and Pardee obtained the same writs in as many separate suits to effect the same object, the unpaid salaries of all being for 1878, and the Citizens' Savings Bank, as holder and transferee of the warrants of sundry district judges, parish judges, and district attorneys amounting to $20,700, also of same year, took the same process. These four suits were by general consent cumulated in this court with this. Besides these, four intervenors holding warrants upon the General Fund asked to participate in the "great divide," but did not pray nor obtain any writ to stay the hand of the treasurer. The sum total of the warrants unpaid, seeking judgment in these proceedings was $37,633.50.

The lower court ordered the money in question to be restored to the General Fund, and made the *mandamus* peremptory for each relator, and directed that the intervenors should be paid beside. Before hearing the appeal, the Justices signed and ordered to be filed the following: —

"Inasmuch as four members of this court hold warrants for their salaries for 1878 that are unpaid, it is now entered of record that each Justice disclaims and abandons all right to any part of the Fund the distribution of which is sought in this suit,"

MANNING, C. J. The testimony of the Treasurer shews the truth of the allegation, that the sum mentioned was collected and received as part of the taxes of 1878, for the General Fund of that year. It is admitted that that sum is now in the treasury, and that it is intended to pay it to the holder of the State-house note. The logical and legal sequence of our decision in Harris *v.* Dubuclet, 30 La. Ann. 662, is that the instalment of the purchase price of the St. Louis Hotel, falling due in any year, can be paid alone out of the half-mill tax levied and collected for that year. The instalment maturing in 1878 has been paid. The instalment maturing in 1879 cannot be paid out of the revenues of any other year.

We cannot give the intervenors any relief. They are not seeking a moneyed judgment against the respondents, nor are the relators, but the relators have obtained an order commanding the restoration

to the General Fund of the sum illegally diverted and a prohibition of any payment thereof in derogation of their rights. The intervenors do not pray nor obtain any writ whatever. Their only process is the ordinary citation. All that the relators ask is that the *mandamus* and injunction be granted so far as may be necessary to protect their rights, and the intervenors do not ask either at all. Their interventions must be dismissed without prejudice to the future assertion of their rights.

All the relators cannot be paid in full. Their claims amount to $30,037.50. The lower court decreed that all should be paid, doubtless because each case was tried separately. It is apparent that the treasurer cannot obey a mandate to pay all the relators and it is urged that Judge Houston should be paid in full, because his vigilance and celerity in first obtaining process for the restoration to the General Fund of the moneys improperly diverted from it, entitle him to preference over all others.

In Walton *v.* Bemiss, 16 La. 140, it was held that where attacking creditors commence their revocatory actions about the same time, and use proper diligence, one shall not have exclusive privilege on the property recovered, simply because his suit was first commenced but the property must be divided *pro rata* among them. Judge Houston's suit was filed January 25, 1879, Judge Pardee's two days afterwards — and Judges Monroe and Tissot's, and the Citizens' Savings Bank's on the 30th of the same month, and process in all was served on or before the 31st. These proceedings are assimilated to the revocatory action, the object being to bring moneys back into a fund out of which the relators were entitled to be paid, and under the ruling in the case cited, the distribution must be *pro rata* among them.

One of the counsel suggested that we could not undertake to make such distribution, but only affirm the judgments of each relator. But in doing that, we should be issuing a peremptory *mandamus* to the Treasurer to do what the record shews us he cannot do, and it would therefore be a vain and useless order.

To avoid any misconstruction of the scope and meaning of this judgment, we feel impelled to announce in unmistakable language that we do not decide that any holder of a warrant can obtain a preference over other holders of similar warrants by taking out process

against the Treasurer and Auditor to compel its payment. We rest our decision of this case exclusively on the ground that there was a fund, out of which the relators were entitled to be paid, that had been improperly diverted to another purpose, and their vigilance and prompt action alone accomplished the restoration of that fund to its proper uses, and therefore they had the first right to payment out of that particular fund.

*Decreed accordingly.*