John Williams *v*. Piner & Co.—Grant & Barton, Intervenors.

P. & Co. shipped to Y. in New Orleans a lot of cotton, the proceeds of which were to be forwarded to G.
& B. of New York. This arrangement was acceded to by G. & B., who wrote to the consignees, prior
to the attachment, to remit to them the proceeds of sale. *Held:* The cotton could not be attached
as the property of P. & Co.

APPEAL from the Second District Court of New Orleans, *Lea*, J.
Benjamin, Bradford & Finney, for plaintiff. J. Livingston, for intervenors
appellants.

Ogden, J.    This suit was brought by attachment against *F. D. Piner & Ira
McKinney*, and against the commercial firm of *F. D. Piner & Co.*, of which
the said *Piner & McKinney* are alleged in the petition to be the sole members.
*R. Yeatman & Co.*, cited as garnishees, and required to answer whether they
had effects in their hands belonging to *F. D. Piner* and *Ira McKinney*, or to
one of them, or to the firm of *F. D. Piner & Co.*, answered negatively, with a
qualification to the following effect: that they had received eighty-seven bales
of cotton under a bill of lading annexed to their answer; that they had received
a letter from *Grant & Barton*, of Philadelphia, (through their agent,) whose
names appear on the bill of lading, and that by said letter they were given to
understand that the cotton was shipped by *Hastings & McCracken* for the firm
of *Piner & Fiser*, for account of the parties mentioned in the bill of lading, and
that by the letter they were requested to forward to *Grant & Barton* the pro-
ceeds of the cotton shipped for their account. The garnishees stated further,
that since the attachment had issued, they had received a letter from *F. D.
Piner*, surviving partner of *Piner & Fiser*, informing them of the shipment and
requesting them when the cotton was sold to forward checks for the proceeds to
the houses mentioned in the bill of lading. A memorandum in the bill of lad-
ing shows that 17 bales of the 87 were shipped for account of *Grant & Barton*,
New York, who, as intervenors, have set up a claim to the proceeds of the sale.

The plaintiff's petition was filed June 22d, 1852, and the attachment was
levied on the same day. The bill of lading is dated at Cold Water, in the State
of Mississippi, April 20th, and the garnishees state the cotton was received on
the 1st of May. By the evidence, it appears that they use two separate and
distinct firms in Mississippi, of *Piner & Fiser*, and *F. D. Piner & Co.*, the lat-
ter being composed of *F. D. Piner* and *Ira McKinney*. *F. D. Piner* was also
one of the firm of *Piner & Fiser*. The latter firm of *Piner & Fiser* were in-
debted to *Grant & Barton*, of Philadelphia, who held their note at the time of
this transaction, past due, for the sum of $516 25. *Ira McKinney*, who testi-
fies in the case, states: "The firm of *Piner & Fiser*, by *M. D. Fiser*, made an
arrangement with me as the firm of *F. D. Piner & Co.*, to pay to *Grant & Bar-
ton* the proceeds of seventeen bales of cotton, by which arrangement *F. D.
Piner & Co.* let *Piner & Fiser* have the 17 bales of cotton, which I caused to
be shipped at the instance of *M. D. Fiser*, with other cotton, to Cold Water, to
*Hastings & McCracken*, shipping merchants, and which I entrusted them to
ship to *R. Yeatman & Co.* New Orleans, on account of *Grant & Barton*." This,
it is contended by the counsel for the intervenors, was an agreement between
the two firms, for the benefit of *Grant & Barton*, the creditors of *Piner &*

*Fiser*, which, according to Article 1884 of the Civil Code, *Grant & Barton*, although not parties to it, have a right to enforce; and the case of *Bonnefe & Co.* v. *McLane*, 5th Ann. 225, is relied on in support of that position. If there was no proof of the arrangement in favor of *Grant & Barton* having been accepted by them previous to their attachment, it might perhaps still be contended that *F. D. Piner & Co.*, to whom the cotton at first belonged, having come under the obligation towards *Piner & Fiser*, of shipping it to New Orleans, to be sold for the benefit of *Grant & Barton*, that the cotton, having been thus shipped in pursuance of the agreement, the consignees, *Yeatman & Co.*, held it and the proceeds of it when sold, in trust for *Grant & Barton*, for whose benefit the agreement was made; that by receiving the cotton under such a bill of lading, *Yeatman & Co.* accepted a trust in favor of a third person, from which they would not have been discharged by paying the money over to either *F. D. Piner & Co.* or to *Piner & Fiser*, without the consent of *Grant & Barton*, or without having first notified them of their acceptance of the trust, and permitting a sufficient time to elapse from such notification to justify the belief that *Grant & Barton* did not design to avail themselves of the benefit of the stipulation in their favor. We are relieved, however, from the necessity of deciding that question, because from the answers of the garnishees, it appears that *Grant & Barton* did accept the arrangement which was made in their favor, and wrote a letter to *Yeatman & Co.*, requesting them to forward the proceeds of the cotton. That the letter written to this effect, by *Grant & Barton*, was received by *Yeatman & Co.* prior to the attachment, we think may be inferred from the answers of the garnishees. They state first, that such a letter had been received from *Grant & Barton*, without saying whether it was received prior or subsequent to the attachment, and immediately afterwards proceed to say, that *since the attachment* issued in the case, they had received a letter from the surviving partner of *Piner & Fiser*, informing them of the shipment. The cotton was shipped two months previous to the attachment. Ample time had intervened for *Grant & Barton* to receive information of the arrangement in their favor and instruct *Yeatman & Co.* on the subject, before the attachment was levied. The garnishees, by stating that the letter from *F. D. Piner* was received since the attachment, left it to be inferred that the letter from *Grant & Barton* had been received prior to that time. At all events, it was the duty of the plaintiffs, under these circumstances, if they thought it left doubtful by the answers, to have given the garnishees an opportunity to explain. They were mere stakeholders, and had no interest to answer evasively.

There being no charge of fraud or combination between any of the parties to the injury of the plaintiffs, we think, on legal principles, the intervenors are entitled to a judgment in their favor for the proceeds of the seventeen bales of cotton received by the garnishees for their account.

It is therefore decreed, that the judgment of the Court below, as regards the claim of the intervenors, *Grant & Barton*, be avoided and reversed, and that there be judgment in favor of said intervenors against *F. D. Piner*, as member of the firm of *Piner & Fiser*, for five hundred and sixteen dollars twenty-five cents, with seven per cent. interest from Feb. 7th, 1852, until paid; that the plaintiff's attachment as regards the seventeen bales of cotton in controversy be dismissed, and that the proceeds of said cotton, in the hands of the garnishees, *R. Yeatman & Co.*, be applied to the payment of the judgment in favor of the intervenors—the costs in both courts to be paid by the plaintiff and appellee.