EDWARD CONERY *v.* WEBB, RAWLINGS & Co.—RAWLINGS, DUNCAN & Co.,
Garnishees—W. H. WEBB, Intervenor.

When appeal is taken by motion in open court, one who is a party to the suit and who signed the appeal bond, although only as surety, will not be permitted to allege that he was not a party to the appeal.

Under the terms " *et alii,*" parties to the suit not expressly named, may be considered as included among the obligees in the bond.

The garnishees had received from the defendants certain promissory notes, with instructions to place the proceeds to the credit of the intervenor, to whom the defendants were indebted. *Held:* That the property in the notes could only enure to the benefit of the intervenor when he had been informed of what was done, and had assented thereto; until then the defendants might have changed the destination of the property. The rule is that, when the proprietor may sell and deliver, the creditor can seize.

APPEAL from the Sixth District Court of New Orleans, *Cotton*, J.

*C. B. Singleton*, for plaintiff. *H. C. Miller*, for intervenor and appellant.

MERRICK, C. J. The plaintiff obtained judgment against *Webb, Rawlings & Co.* for $1700 77, and interest.

In aid of an execution issued upon this judgment, the plaintiff propounded to *Messrs. Rawlings, Duncan & Co.*, of this city, interrogatories requiring them to answer under oath, as garnishees, whether they had not cotton, promissory notes and other effects belonging to the defendants. The garnishees answered that they had nothing belonging to the defendants, but had received from *Webb & Rawlings*, of Memphis, certain promissory notes, with instructions to place the proceeds to the credit of *W. H. Webb*, to whom said *Webb & Rawlings* were largely indebted; and that the garnishees had, previous to the seizure in this case, informed *Webb & Rawlings* that they would place the proceeds to

the credit of *W. H. Webb*. The firm of *Webb & Rawlings* was composed of the same members as the branch of the same house in New Orleans, styled *Webb, Rawlings & Co.*, and being the defendants in the original suit. The firm of *Rawlings, Duncan & Co.* (the garnishees) is a distinct firm and not composed of the same partners as the other firms mentioned. The plaintiff traversed (successfully as was deemed by the District Court) the answers of the garnishees, and judgment was rendered against them and also against the right of *W. H. Webb*, who had intervened in the suit. *Webb* appealed by motion in open court, and *Duncan & Rawlings*, of the firm of *Rawlings, Duncan & Co.*, with *G. W. Logan, Jr.*, signed the appeal bond as sureties, which was made payable to "*Edward Conery et al.*"

A motion has been made to dismiss the appeal, on the ground that proper parties to the appeal have not been made, and that the bond ought also to have been in favor of *Webb, Rawlings & Co.*, *Webb & Rawlings* and *Rawlings, Duncan & Co.*

The latter firm having signed the appeal bond as sureties, which is payable to "*Edward Conery et al.*," could not be permitted to allege that they were not parties to the appeal. *Webb & Rawlings* are no parties to the proceedings, except so far as the firm of *Webb, Rawlings & Co.* is identical with it. *Webb, Rawlings & Co.* are parties to the suit and may be considered as included among the obligees in the bond under the term "*et alii.*" See *Bachus* v. *Moreau*, 4 An. 314. The motion to dismiss the appeal is therefore overruled.

On the trial of the cause as to the garnishees and the intervenor *Webb*, the latter offered to read in evidence the deposition of *J. J. Rawlings*, one of the defendants in the original suit, and consequently a member of the firm of *Webb & Rawlings*, of Memphis. This testimony was objected to and excluded on the ground that *J. J. Rawlings* was a party to the suit and interested in the result of the present controversy. The intervenor excepted.

Without deciding the question raised by the bill of exception, we remark that if the intervenor be allowed the full benefit of this deposition, it will not make out his case. The testimony of this witness explains the transactions of the parties more in detail than do the answers of the garnishees *Rawlings, Duncan & Co.*, but it adds nothing of force to those answers, and on the answers and deposition together, we think the judgment of the lower court must be affirmed.

It appears that the firm of *Webb & Rawlings* was indebted to *W. H. Webb*, a planter of Tennessee, in the spring of 1855, in a balance of between nine and ten thousand dollars, for advances of cash and proceeds of cotton during the year 1854, previous to the dissolution of the two firms of *Webb & Rawlings* and *Webb, Rawlings & Co.*, which took place in July and September of that year, each partner having power to use the partnership name of either firm in liquidation. In the spring of 1855, in a conversation with *W. H. Webb*, the witness *J. J. Rawlings* promised him that on the return of his partner *S. M. Webb*, who was then on a tour of collection, that *if they (Webb & Rawlings) could not pay the money*, they would give him such paper as the witness thought most available to him, it being understood, as the witness says, that it should be discretionary with him what paper to transfer. *S. M. Webb* having returned with two notes on *Jos. J. Scales*, one dated May 31, 1855, for $3843 50 cents, and the other dated November 1st, 1855, for $394 50, and another note on *W. A. Thomas*, for $170 02, dated May 26, 1855, all payable to *Webb*,

*Rawlings & Co.*, the New Orleans branch of the house, on the 22d of December, 1855; the name of *Webb, Rawlings & Co.* was indorsed upon the notes, and they were transmitted by *Webb & Rawlings* to *Rawlings, Duncan & Co.*, of New Orleans, to collect and place to the credit of *W. H. Webb. Rawlings, Duncan & Co.* notified *Webb & Rawlings* that they would obey the instructions.

It is fair to presume that the notes were assets of the New Orleans house, because they were payable to it, and because they were sent to this city for collection. *W. H. Webb* does not appear to have had any correspondence with *Rawlings, Duncan & Co.*, and *his account with Webb & Rawlings was not even debited with the notes so sent.* The witness states that it (viz, the indorsement and sending of the notes to *Rawlings, Duncan & Co.*) was intended as a payment to *W. H. Webb*, and that the notes would have been given to him (*W. H. Webb*) in person, had it been known where he was. But before information had been communicated to him of what had been intended and done on his behalf by his debtors, viz, on the 29th December, 1855, the plaintiff had levied his execution and served his proceeding in garnishment on *Rawlings, Duncan & Co.*, the holders of the notes of *Scales* and *Thomas.*

*W. H. Webb* was not apprised of what had been done until the 26th day of January, 1856, and for the first time he testified his acquiescence on the 2d day of February, 1856, (more than a month after the garnishment,) by letters addressed to *Webb & Rawlings* and to *Scales*, the maker of the principal notes.

It is clear that at the time the execution was levied and the proceeding against the garnishees was served, that the paper in the hands of *Rawlings, Duncan & Co.* was under the entire control of *Webb, Rawlings & Co.*, or *Webb & Rawlings*, and that they might have countermanded the order to hold the proceeds for the benefit of *W. H. Webb*, and could have directed the proceeds to be paid to the plaintiff or any one else. The property in the notes could only enure to the benefit of *Webb*, when he had been informed of what was done and had assented thereto. Had the makers of the notes become insolvent, he would not have been bound to receive them, nor was he bound to recognize *Rawlings, Duncan & Co.* as his agents.

Before the information had been given him and he had assented to the arrangement, the notes were attached and the power given to *Rawlings, Duncan & Co.* to appropriate the proceeds to the payment of *W. H. Webb* was revoked by the effect of the attachment.

The case falls within the rule laid down in the case of *Armour* v. *Cockburn*, which has been affirmed by repeated decisions, "That where the owner of the property has lost all power over it and cannot change its destination, the creditors cannot attach; the converse of the rule being that whenever the proprietor may sell and deliver, the creditor can seize." 4 N. S. 669; 3 An. 82. If it be considered that the delivery of the notes to *Rawlings, Duncan & Co.* was accompanied with the *stipulation pour autrui*, (C. C. 1884, 1896,) the same was subject to revocation until accepted. *Gravier* v. *Gravier*, 3 N. S. 206. See cases of *Wilson* v. *Lizardi*, 15 L. R. 255, and *Goodhue* v. *McClarty*, 3 An. 56.

Judgment affirmed.