McBRIDE, Judge.
The facts presented by this appeal are rather complicated.
Bernard M. Day, the owner of the real estate, 324 Sena Drive, Metairie, Jefferson Parish (an asset of the community formerly existing between himself and Mrs. Lela Day from whom he was legally separated) agreed to sell the property to a purchaser (through American General Savings & Loan Association) who had been procured by Caruso-Goll, a partnership engaged in the business of real estate broker. The agreed sale price was $28,600 and the purchaser was bound by the agreement to deposit 10 per cent thereof, or $2,860, with Caruso-Goll to bind the sale; which he did.
Eventually the act of sale was readied by Robert R. Ramos, a Notary Public in New Orleans, who was to officiate at its passage. However, as the property was burdened with various mortgages, judgments and liens, which, together with the costs incident to the sale, including the real estate broker’s commission of $1,394, aggregated the sum of $27,644.73, it became necessary that Mr. Ramos see to it that all of said charges be paid before a clear and unencumbered title could be passed to the purchaser. It also developed that it would be essential that Caruso-Goll pay over to, Mr. Ramos the 10 per cent of the purchase price (less its broker’s commission) which had been deposited by the purchaser to bind the sale. Caruso-Goll refused to do this for the assigned reason that at some time previous it had made cash advances to Bernard M. Day consisting of a loan of $500 for defraying labor costs in connection with the improvements on 324 Sena Drive and the sum of $450.13 *147 for payment of insurance premiums due by Day; Caruso-Goll contended that it was entitled to retain, in addition to its commission on the sale, the $950.13, which Day owed it, out of the purchaser’s deposit of $2,860. A conference was held at which Bernard M. Day was present, and it was brought out by Mr. Ramos that he would not be able to pass the act of sale unless and until the deposit the purchaser had made with Caruso-Goll be turned over to him as it was thought at the time that without the amount of the deposit there would be an insufficiency of funds in hand with which to pay the claims against the property. It appears that Caruso-Goll finally, and it may be said reluctantly, agreed to and did surrender the deposit to Mr. Ramos, and upon receipt thereof the latter paid Caruso-Goll by his check the amount due for the broker’s commission on the sale.
The record' makes it abundantly clear that Caruso-Goll only parted with the deposit upon Day’s representation that he would pay Caruso-Goll the $950.13 out of the proceeds of the sale if the amount of the asserted claim proved to be correct.
With this understanding the act of sale was passed. Because of their legal separation both Bernard M. Day and Mrs. Lela Day were required to sign the act. A statement of account rendered by the Notary showed that after paying the many charges against the property, plus the expenses of the sale, there remained undisposed of the sum of $955.27. To balance the account Mr. Ramos wrote out his check for that amount, which he made payable to the joint order of Mr. and Mrs. Bernard M. Day, and the check, with the consent of all parties, was then given to Mr. Russell Schonekas, an attorney at law, who was present as the legal representative of Mrs. Day. Bernard M. Day agreed that the claim of Caruso-Goll would be paid out of the proceeds of the check. The evidence makes it certain that the check was turned over to Mr. Schonekas to hold it until it could be determined whether Mrs. Day had an interest, and that if events showed that she had no interest in the check, Caruso-Goll was to be paid the amount due out of the proceeds. According to Mr. Schone-kas’ testimony, Day “was agreeable to Mr. Caruso being paid out of these proceeds and if it had not been for myself it would have been paid right then.”
It might be stated, parenthetically, that Mrs. Day subsequently determined that the claim of Caruso-Goll was a legitimate debt of the community and she thereupon authorized Mr. Schonekas, so far as she was concerned, to deliver the check to the claimants. She also renounced her interest in the community in writing and affixed her endorsement on the check.
Bernard M. Day has never endorsed the check and his reason for withholding his endorsement appears from his testimony thus:
“As far as what Mr. Caruso stated, he said that this $500.00 was labor on my house, well, it wasn’t labor, it was a loan. I did promise to pay him the $500.00 out of the sale but not out of the deposit. The four hundred and some dollars was for insurance and I had a rebate coming back on that. That was the reason the signing of the check was held up. I know that I owe him the money and I want to pay him but I had no bill from him. If he can show me it’s nine hundred or nine hundred and fifty dollars ($950.00) he has it coming * *
Shortly after Mrs. Day’s renunciation of her community interest and her endorsement of the check, the King Finance Company, a judgment creditor of Bernard M. Day, obtained a writ of fieri facias, under which Russell Schonekas was made garnishee and as such was required to make answer to the usual interrogatories of garnishment. In responding, the garnishee admitted he had in his hands “Check No. 9531 of Robert R. Ramos, Attorney at Law, *148 dated September 28, 1955, payable to the order of Mr. & Mrs. Bernard McWilliams Day in the amount of $955.27.” Caruso-Goll intervened in the proceedings by making opposition to the garnishment, the grounds of which were that Bernard M. Day is indebted unto it for $950.13 for which it has a lien against the moneys in the hands of the garnishee. Caruso-Goll prayed for recognition of its claim and “setting the claim of King Finance Company as secondary, and for all just and equitable relief.” To the opposition the seizing creditor filed an exception of no cause of action coupled with what amounts to a general denial of the allegations thereof.
Pending trial of Caruso-Goll’s opposition, King Finance Company caused garnishment process to be issued to Robert R. Ramos, and this garnishee in making answer thereto set forth:
“Garnishee now shows that he has no funds in his possession belonging to Bernard McWilliams Day, as all of said proceeds have been checked out by him, as appears by statement hereto attached and made part hereof, and that garnishee is responsible to the holders of such checks, or to whom such checks were negotiated, for the amount represented thereby.”
The judgment creditor next filed a rule to traverse the answers of Ramos.
The matter was regularly fixed for trial and the opposition of Caruso-Goll to the 'original garnishment as well as the rule to traverse the garnishee’s answer in the second garnishment came up for hearing at the one time. At the conclusion of the evidence it was the opinion of the trial judge that Caruso-Goll was entitled to have its claim against Bernard M. Day paid out of the proceeds of the check with preference over King Finance Company and that the rule to traverse Ramos’ answers to the garnishment against him should be dismissed, and judgment was rendered accordingly.
King Finance Company has prosecuted this appeal.
We fail to find any error in the judgment. Mr. Ramos made the check for the residue payable to the order of both Mr. and Mrs. Bernard M. Day for the specific purpose of protecting himself in the event both payees were to participate in the distribution of the funds, and it was agreed by all parties that this check would be provisionally placed with Mr. Schonekas until it could be determined whether Mrs. Day had any interest. Bernard M. Day assented that the proceeds of the check would be utilized for the payment of Caruso-Goll’s claim, and it was based upon this that Caruso-Goll surrendered to the Notary Public the 10 per cent of the purchase price which had been deposited by the buyer of the property. As has been stated above, Mrs. Day subsequently determined that she had no interest and waived all her claims against the community and even went so far as to endorse the check which was to continue to remain in Schonekas’ possession until such time as Day could ascertain whether the amount claimed of him by Caruso-Goll was correct.
In other words, we have here a case wherein a debtor placed in the hands of a third person a negotiable instrument which was to be paid to the creditor of the consignor to which condition the creditor agreed. The consideration of the 'deposit of the check with Schonekas was the waiver by Caruso-Goll of whatever right it may have had to retain the 10 per cent of the purchase price which had been made with it in connection with the sale.
Under such circumstances we do not believe that King Finance Company could legally or effectively attach the deposit to the detriment of Caruso-Goll. This proposition is not new to our jurisdiction for we find that in several in *149 stances the Supreme Court has adjudicated similar cases.
In Conery v. Webb, 12 La.Ann. 282, promissory notes had been deposited with the garnishee for the benefit of a creditor who, however, had never assented to the arrangement; it was then that another creditor who held a judgment attached the notes via garnishment. While the Court made the ruling that the seizing creditor was entitled to the notes, this conclusion was based on the theory that the creditor for whose interest the deposit had been made had never assented thereto and that the notes were still under the control of the depositing debtor. The Court said:
“ * * * The property in the notes could only enure to the benefit of Webb, when he had been informed of what was done and had assented thereto. * * * ”
In Williams v. Piner, 10 La.Ann. 277, the debtor had shipped certain cotton to the garnishee, the proceeds of the sale of which were to be forwarded to a creditor in New York, who had accepted the arrangement before an attachment by another creditor. The Court held that in view of the acceptance by the creditor for whose benefit the consignment had been made, the attachment must fall as the debtor had no further control of the property.
Again in Burnside v. McKinley, 12 La.Ann. 505, the defendant shipped cotton to its agent, the garnishee, with instructions to sell the same and to pay over the proceeds to its creditor, the intervenor. To this the creditor agreed and some time afterward the defendant sold the cotton which, before being weighed or delivered, was attached by the plaintiff, another creditor of the defendant. It was held that the intervenor, the creditor in whose interest the deposit had been made, was entitled to be paid by preference.
In another case, Dolsen v. Brown, 13 La.Ann. 551, the holding was that the creditors of a consignor cannot attach merchandise, or its proceeds, in the hands of the consignee when the consignments were made with express instructions for payment to a third party who has accepted the stipulation in his favor.
Much was said in argument and brief regarding the fact that Bernard M. Day has not endorsed the check. We do not think that this circumstance deprives Caruso-Goll of the benefits intended. This court held in Dufour Bertrand Feed Co. v. Dedebant, 9 Or.App. 321, that the presumption that a note, not endorsed, is the property of the payee, is not overcome by the mere fact of the note being in the physical possession of a third person, but that the presumption may be rebutted by evidence showing that such third person is the true and bona fide owner thereof. And in Continental & Commercial National Bank of Chicago v. Bluefields Tanning Co., Orleans, No. 7121, unreported, see Louisiana & Southern Digest, we held that endorsement is not the only method of transferring ownership in ' bills and notes; such transfer of ownership may be made by simple assignment, which need not even be in writing.
The garnishment against Ramos has no legal standing whatever. The check he issued represented money and was merely a vehicle of delivery of money and the acceptance of this method of settlement by the payees is considered conditional payment of the account until the check has been presented and paid or dishonored. See Bates-Crumley Chevrolet Co., Inc., v. Brown, La.App., 141 So. 436; Gulf Motor Lines, Inc. v. European Agencies, Inc., La.App., 155 So. 523.
For these reasons, the judgment appealed from is affirmed.
Affirmed.