417 So.2d 137 (1982)
SALES PURCHASE CORPORATION, Plaintiff-Appellant,
v.
Edgar Clive PUCKETT, et al., Defendants-Appellees.
No. 14912.
Court of Appeal of Louisiana, Second Circuit.
June 15, 1982.
Rehearing Denied July 23, 1982.
John G. Loftin, Monroe, for plaintiff-appellant.
Joe D. Guerriero, Monroe, Blaine Adkins, West Monroe, for defendants-appellees.
Before PRICE, JASPER E. JONES and MARVIN, JJ.
*138 JASPER E. JONES, Judge.
This is a garnishment proceeding. The controversy springs from Sales Purchase Corporation's (hereinafter SPC) attempt to satisfy its judgment against Edgar and Clementine Puckett, in solido, for the sum of $6,233.74.
THE FACTS
The parties involved in this controversy are SPC, plaintiff, Clementine or Estelle Puckett, a defendant, Dr. Barry Bradley, intervenor, and Joe D. Guerriero, Puckett's attorney in a separate tort action in which she was the plaintiff.
On September 17, 1981, SPC obtained a judgment against Edgar Puckett, solidary obligor with Clementine Puckett, for $6,233.74.[1] A writ of fieri facias was issued on October 7, 1981. That day SPC seized the interest of Ms. Puckett in her tort action Number 127,376, Puckett v. Ezell, et al., in Fourth Judicial District Court. SPC was then informed that Puckett's suit had been settled on October 6, 1981 for the sum of $6,500.
On October 16, 1981, SPC garnished Puckett's property in the hands of her attorney, Joe D. Guerriero. Guerriero answered the garnishment interrogatories that the funds in his possession belonging to Puckett were limited to $2,812.67 with the remainder of the settlement proceeds owed as follows:

Bank Charges __________________ $ 8.50
Joe D. Guerriero (Legal Fees)__ 2,163.33
Dr. Barry Bradley (Medical
 Fees)________________________ 1,490.00
Dr. F. D. Peyton (Medical Fees) 25.00

Dr. Bradley intervened asserting that his fee was secured against the settlement proceeds by his "Doctor's Lien" agreement and that his claim should be recognized as superior to all others. SPC answered the intervention and filed a motion traversing the answers to its interrogatories.
The motion was heard and the district judge rendered judgment ordering the settlement funds disbursed as follows:

Joe D. Guerriero _____________ $2,163.33
Dr. Barry Bradley ____________ 1,490.00
Sheriff for benefit of SPC ___ 2,837.67
Bank Charges ________________ 8.50

SPC appeals and asserts five assignments of error. Appellant contends that the district judge erred in (1) finding its seizure of Puckett's interest in her suit invalid; (2) finding the "Doctor's Lien" effective against third parties when the defendants in the tort suit had not been notified of it; (3) ruling that the lien transferred Ms. Puckett's rights to Bradley in a manner effective against third parties; (4) finding that notice to Guerriero transferred Puckett's rights to Bradley when given while Guerriero was not Puckett's obligee; and (5) giving effect to the "Doctor's Lien" agreement as a lien, pledge or assignment when the amount of the debt was not mentioned in the instrument.
On appeal SPC concedes that the judgment is correct as to the attorney's fees and bank charges and attacks the judgment only as it relates to Dr. Bradley's fee. Thus, this case requires the resolution of two issues(1) was the attempted seizure of Puckett's interest in her suit effective, and (2) if not, does the "Doctor's Lien" agreement have any effect entitling Dr. Bradley to a preference over SPC?
ISSUE NO. 1
SPC contends that its seizure of the interest in the suit was effective, even though done after settlement, because it was done before the drafts representing the settlement were paid.[2] We disagree.
A draft or check is conditional payment and when honored on presentment constitutes payment as of the date received. *139 Seliga v. American Mutual Liability Insurance Co., 174 So.2d 878 (La.App. 4th Cir. 1965); Ivy v. American Road Ins. Co., 409 So.2d 549 (La.1981). Therefore, it is insignificant that the drafts had not been paid when the seizure was attempted.
The compromise of a pending action by the parties ends the suit. Bowden v. State Farm Mutual Ins. Co., 150 So.2d 655 (La.App. 3d Cir. 1963). Here the compromise took place before the seizure, the suit was ended at the time of the seizure and the seizure was ineffective.
The appellant's first assignment of error is without merit.
ISSUE NO. 2
Through assignments No. 2-5 appellant contends that its garnishment should give it a preference over Dr. Bradley because of various defects which render the "Doctor's Lien" ineffective as a lien, assignment or pledge. The issue here, however, is not merely whether the "Doctor's Lien" agreement is a valid lien, assignment or pledge. The issue isis the "Doctor's Lien" agreement effective on any basis, to deprive appellant of the preference it would normally have achieved by virtue of the garnishment?
The "Doctor's Lien" agreement is reproduced below:
 RE: Medical Reports and Doctor's Lien
 I do hereby authorize the above doctor to furnish you, my attorney, with a full report of his examination,
diagnosis, treatment, prognosis, etc., of myself in regard to the accident in which was involved.
 I hereby authorize and direct you, my attorney, to pay directly to said doctor such sums as may be due
and owing him for medical service me both by reason of this accident and by reason of any other
bills that are due his office and to withhold such sums from any settlement, judgment or verdict as may be
necessary to adequately protect said doctor. And I hereby further give a lien on my case to said doctor
against any and all proceeds of any settlement, judgment or verdict which may be paid to you, my attorney,
or myself as the result of the injuries for which I have treated or injuries in connection therewith.
 I fully understand that I am directly and fully responsible to said doctor for all medical bills submitted
by him for service rendered me and that this agreement is made solely for said doctor's additional protection
and in consideration of his awaiting payment. And I further understand that such payment is not contingent
on any settlement, judgment or verdict by which I may eventually recover said fee.
 The undersigned being attorney of record for the above patient does hereby agree to observe all the
terms of the above and agrees to withhold such sums from any settlement, judgment or verdict as may be
necessary to adequately protect said doctor above named.
*140
Mr. Attorney: Please date, sign and return one copy to doctor's office of once.
 Reply envelope attached.
 Keep one copy for your records.
The well written reasons of the district judge show that he did not give effect to the agreement as a lien, pledge or assignment. Rather, the district judge found the agreement to constitute a promise by Puckett to pay the medical bills, a grant to the doctor of the right to collect them from the proceeds of her suit, and an order to her agent, Guerriero, to carry out those promises. We are substantially in accord with that analysis.
The consent to establish an agency relationship may be express or implied and such a relationship may be created by parties even though they do not intend to do so. Busby v. Walker, 84 So.2d 304 (La.App. 2d Cir. 1955). An agency relationship is created when one consents for another to act for him and subject to his control and the other agrees to do so. Automotive Finance Co. v. Kesk, Inc., 200 So.2d 136 (La. App. 4th Cir. 1967). An implied agency is often established by the words and conduct of the parties and the circumstances of the case. Busby, supra.
Dr. Bradley provided the "Doctor's Lien" form used in this case. In the agreement Puckett authorized and directed Guerriero to pay directly to Bradley sums owed for medical services. Guerriero agreed to observe all the terms above "and to withhold such sums from any settlement, judgment or verdict as may be necessary to adequately protect" Dr. Bradley.
The circumstances of this case make it clear that the agreement was made with the consent of Puckett, Guerriero and Bradley.[3] The consent of Puckett and Guerriero is shown by their signatures on the document. The consent of Dr. Bradley is shown by his actions in furnishing the form, his request that a signed copy be returned to him and his failure to object after receiving the copy.
Under the agreement Guerriero became an agent for both Puckett and Bradley. He was Puckett's agent to pay Bradley from the proceeds of the suit, and Bradley's agent to receive sums from the proceeds of the suit on the account of Puckett. Thus, when Guerriero received the drafts, approximately ten days before the garnishment, he immediately began holding them in three different capacities(1) for himself to the extent of his fees, (2) as Dr. Bradley's agent to the extent of $1,490, and (3) as Puckett's agent for the remainder.
At the time of the garnishment, Guerriero held only $2,837.67 belonging to Puckett. That one of the drafts had not been paid by then is irrelevant. Seliga; Ivy; supra. SPC's garnishment did not give it rights superior to Bradley's.
This conclusion is supported by the jurisprudence.
In Williams v. Piner & Co., 10 La.Ann. 277 (1855), a quantity of cotton was shipped to a commercial firm by one party for the account of another party. The firm was instructed to forward the proceeds of the sale of the cotton to the beneficiary party and that party approved the arrangement. After the sale, plaintiff, a creditor of the shipping party, attached the proceeds. The supreme court dissolved the attachment and recognized the beneficiary as entitled to the proceeds of the sale.
*141 J. Burnside & Co. v. McKinley and Moore, 12 La.Ann. 505 (1857), involved facts similar to those of Williams. Defendant shipped cotton to the garnishee with instructions to sell it and pay the proceeds to the intervenor. The garnishee notified the intervenor of the arrangement and suggested that the cotton be held until the price rose before sale. The intervenor assented the arrangement. After the cotton was sold, but before its delivery, plaintiffs attempted to garnish it. The court found that the garnishee was acting as trustee for the intervenor and that the intervenor had a vested interest in the cotton, and its proceeds, entitling it to a preference over the creditor.
In King Finance Company v. Day, 92 So.2d 145 (La.App.Orl.1957), the court held that where a debtor places a negotiable instrument in the hands of a third person to be paid to a creditor and the creditor agrees to the arrangement, the funds may not be attached to the detriment of the consenting creditor by other creditors.
Puckett directed Guerriero to pay Bradley when he received the proceeds of the suit. Guerriero agreed to do so and Bradley consented to the arrangement and made Guerriero his agent to receive the payment. When Guerriero received the drafts these things were accomplished, and at the time of the garnishment Guerriero possessed only $2,837.67 belonging to Puckett. Thus, the agreement protected the sum owed to Bradley from SPC's garnishment. Williams; J. Burnside & Co.; King Finance Company; supra; L. J. Dolsen & Son v. E. Brown & Son, 13 La.Ann. 551 (1858).
For the foregoing reasons the judgment is AFFIRMED at appellant's cost.
NOTES
[1] On August 27, 1981, SPC had obtained a judgment for this amount against Clementine Puckett alone.
[2] There were two insurer-defendants in Puckett's action. In the settlement one insurer gave a draft for $1,000 and the other a draft for $5,500.
[3] The agreement was executed in early January, 1981, months before SPC obtained its judgment and was not an attempt to defraud SPC or any other creditor's rights.